## THE STATE v. NOAH JACKSON, Appellant.

Division Two, June 8, 1909.

1. MOTION FOR NEW TRIAL: Filed But Not Overruled Before Judgment. Where defendant's motion for a new trial in a criminal case was timely filed after verdict and before sentence was pronounced and judgment rendered, the pronouncing of sentence and the rendering of judgment while said motion was pending will not deprive defendant of the right to have his exceptions and the evidence considered on his appeal, although his counsel were present when sentence was pronounced and he was asked if he had anything to say why sentence should not be passed upon him. A court is presumed to have knowledge of its own records, and the pronouncement of sentence and the rendering of judgment were tantamount to a formal overruling of his motion for a new trial.

2. MOTION TO DISCHARGE: Preservation for Appeal. The record proper should show the filing of all motions. Setting them out in the bill of exceptions and reciting therein that they were filed is not sufficient.

3. ———: Indictment: Clerk's Indorsement. The fact that the clerk had failed to indorse on the indictment the filing thereof and the date of such filing did not deprive the court of jurisdiction to try defendant, either in the court to which the same was regularly returned, or in the court to which the case was taken by change of venue.

4. FORGERY: Deposit Slip: Subject of Debt: Ejusdem Generis. An ordinary bank deposit slip or deposit ticket is the subject of forgery. It is an "evidence of debt," within the meaning of Sec. 2001, R. S. 1899, making it forgery to forge, counterfeit, falsely make or alter "any promissory note, bill of exchange, draft, check, certificate of deposit, or other evidence of debt, being or purporting to be made or issued by any bank," etc.; and even if the rule applied that by the words "or other evidence of debt" is meant something of like kind as those things previously enumerated, it is of like kind with a "certificate of

State v. Jackson.

deposit," since it simply states that the named depositor has deposited so much money in the bank; and whether negotiable or not, it is important evidence of the amount deposited in a controversy between the bank and the depositor.

5. ——: ——: **Injury to Another.** A bank deposit slip has such legal validity and so affects the legal rights of the bank as to injure the bank if forged. It furnishes to the depositor evidence of the amount of money he has deposited with the bank, and the signature of the cashier thereon being acknowledged to be genuine it is of itself prima-facie evidence that the bank is indebted to the depositor to the amount named therein, and if that amount is increased by the alteration of the depositor there is a resulting injury to the bank. So that where the indictment charges the deposit slip to be an evidence of debt, and sets it forth *in haec verba*, it is not necessary to allege any extrinsic matter to give the forged or altered slip any force or effect beyond what appears on its face.

6. ——: ——: **Variance.** Where the trial court failed to find that there was any variance between the deposit slip set out in the indictment (which charged that it purported to be signed by "C. E. Packard, Cashier, DeHart" or by "C. E. Packard, Cashier, D") and the proof (which was to the effect that DeHart, after signing the name C. E. Packard to the duplicate, stamped "Cashier" thereunder, and to indicate who received the deposit added just under the word "Cashier" either the letter "D" or the name "DeHart"), the Supreme Court will not hold that there was a fatal variance between the indictment and proof—the forgery consisting in changing the "$100" named in the duplicate to "$11,000" and in adding as "gold" deposited "$8,000," and adding the two together, showing a deposit of "$19,000."

7. **INSTRUCTION: Circumstances: Forgery.** The court told the jury in a forgery trial that "it is not necessary to prove that defendant is guilty by the testimony of witnesses who have seen the offense committed. His guilt may be shown by proof of facts and circumstances from which it may be reasonably and satisfactorily inferred." *Held,* that it would have been more appropriate to have followed approved precedents, yet the instruction is not reversible error, and that is particularly true when it is taken in connection with the full and clear instructions on the subject of reasonable doubt, presumption of innocence, etc., and on the nature and character of the proof necessary to warrant a conviction.

8. ——: **Refusing Defendant's.** It is not error to refuse instructions asked by defendant where those given fully cover every subject connected with the offense charged to which the testimony was applicable.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*John A. Cross, J. M. Sandusky, R. H. Musser, Pross T. Cross* and *William Henry* for appellant.

(1)   Defendant's motion for his discharge should have been sustained, for the reason that the court was without jurisdiction to try him on the indictment herein.  Sec. 2512, R. S. 1899, requires that indictments returned by the grand jury "shall be presented to the court and shall be there filed and remain as records of such court."   Defendant was entitled to know that he was being tried upon the indictment "there filed" in the Clinton Circuit Court, which, if the law has been complied with, is a record of that court, and the State should have shown that the copy of the indictment, upon which defendant was tried, was in fact the indictment "there filed" if in fact one was "there filed," and the circuit court of Clay county, before exercising jurisdiction of the indictment, should have required the showing in full compliance with this statutory requirement by proof of its filing, or by amendment of the transcript, if in fact such indictment was "there filed" by the indorsement of the clerk of said court thereon, showing the date of said filing.   State v. Clark, 18 Mo. 432; State v. Gate, 68 Mo. 22; State v. Bell, 158 Mo. 479; State v. Simpson, 67 Mo. 647; State v. Green, 19 Ark. 178; State v. McKenzie, 24 Ark. 636; State v. Goodson, 29 Fla. 511; State v. Westcott, 31 Fla. 458; Garden City Ins. Co. v. Stayart, 79 Ill. 259.   (2)   Is the indictment good in this case?   It charges defendant with having forged a certain evidence of debt, commonly known as a deposit slip or deposit ticket, on the Farmers' Bank of Cameron, Missouri, and undertakes to set out in the indictment the alleged forged instrument *in haec verba,* without a single averment

of any extrinsic matter which could give the instrument alleged to have been forged any force or effect beyond what appears on its face.   The deposit slip has no legal validity and affects no legal rights so as to injure another, which should appear from the indictment charging the offense, that such was its legal character, either by the instrument itself or by matter *aliunde* which will show it to be of that character. The indictment fails to comply with this rule.   State v. Clark, 8 Ohio St. 630; Raymond v. People, 30 Pac. 510; sec. 2001, R. S. 1899.   All the instruments mentioned in this section are made negotiable instruments by the laws of this State, and an instrument on which a suit could be brought. Laws 1905, p. 243.   The statute only applies to negotiable instruments and other evidence of debt *ejusdem generis*.   State v. Schuchman, 133 Mo. 111; State v. Kruger, 134 Mo. 262.   The term deposit slip or deposit ticket, as used in said indictment, is not such an evidence of debt as comes within the term "or other evidence of debt" as therein used; it is a general term, following specifically defined instruments of indebtedness, and can only be construed as including evidence of debt of a like class to those specifically defined.   State v. Schuchman, supra; End., Int. Stat., sec. 400; State v. Williams, 2 Strob. 474; Ins. Co. v. Hamilton, L. R. 12 App. Cas. 484; Bank v. Bank, 102 Mo. App. 357; Weisinger v. Bank, 10 Lea. 330; Bank v. Clark, 134 N. Y. 368; Hotchkiss v. Mosher, 48 N. Y. 478; Mander v. Bank, 20 U. C. C. P. 125, 21 U. C. C. P. 493; Bolles, Mod. Law of Banking, pp. 466, 467; Talcott v. Bank, 53 Kan. 480; Lang v. Strauss, 107 Ind. 94.   (3)   There is a fatal variance between the deposit slip or deposit ticket described in the indictment and the deposit ticket or deposit slip proven in the testimony, both as to the date and signature.   State v. Smith, 31 Mo. 120; State v. Wall, 39 Mo.

532; State v. English, 67 Mo. 136; State v. Owen, 73 Mo. 440; State v. Chamberlain, 75 Mo. 382; State v. Jackson, 90 Mo. 156; State v. Chinn, 142 Mo. 507; State v. Kardowski, 142 Mo. 463; State v. Reed, 154 Mo. 122; State v. Weeks, 88 Mo. App. 263; State v. McNerny, 118 Mo. App. 60. The evidence in this case does not even tend to prove that the deposit slip, set out in the indictment, was signed at all, much less signed by some one as an officer of the bank. State v. Fay, 65 Mo. 490; State v. Stowe, 132 Mo. 199; State v. Imboden, 157 Mo. 83; State v. Harroun, 199 Mo. 519.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) Nothing but the record proper can be considered, as defendant was duly sentenced and judgment pronounced before his motion for new trial was passed upon. Preliminary to the sentence he was asked in the presence of his counsel if he had any legal cause to show why judgment should not be pronounced. If he desired to have matters of exception reviewed, it was his duty to call the court's attention to the fact that his motion for new trial was pending, and failing in this he must be held to have waived same. Secs. 2658, 2659, 2689, R. S. 1899; McComas v. State, 11 Mo. 79; Carrington v. Hancock, 23 Mo. App. 299; State v. Nagel, 136 Mo. 50; State v. Hall, 26 W. Va. 236. (2) The indictment charges with precision the elements and facts necessary to constitute the crime of forgery, and fully informs the defendant of the exact nature and cause of the accusation against him. State v. Yerger, 86 Mo. 37; State v. Paul, 203 Mo. 687; State v. Bell, 212 Mo. 129. (a) It is not necessary that the indictment charge an intent to defraud any particular person. It is sufficient if it charges generally an intent to defraud. State v. Phillips, 78 Mo. 49. (b) There is no merit in defendant's contention that a

deposit slip or ticket issued by a bank to a depositor is not a subject of forgery. These slips are issued for the sole purpose of furnishing a depositor evidence of his claim and right, and the liability of the bank to him. They are the most solemn and positive acknowledgments on the part of the bank of its receipt of the holder's money, and of its indebtedness to him, and afford the best foundation of legal liability. If genuine, they alone would establish the bank's indebtedness to the holder, and are of absolute legal efficacy. No instrument could be more prejudical to the rights of the bank than this. Forgery is the false making, or materially altering with intent to defraud, of any writing, which, if genuine, might be of legal efficacy, or the foundation of legal liability, or the evidence of another's rights and claims. Any instrument which purports on its face to be good and valid for the purposes for which it was intended, and which may operate to the prejudice of the rights of another, is a subject of forgery. State v. Kattleman, 35 Mo. 107; State v. Gullette, 121 Mo. 456; State v. Eads, 68 Mo. 150; State v. Tobie, 141 Mo. 559; State v. Sharpless, 212 Mo. 194; Shannon v. State, 109 Ind. 407; State v. Kimball, 50 Me. 409; Barnum v. State, 15 Ohio 717; Long v. Strauss, 107 Ind. 94. (c) The forgery of a receipt, or the fraudulent alteration of a date or amount thereof, with intent to prejudice the rights of another, or obtain thereby credit for money, is within the statute against forgery. State v. Kattleman, 35 Mo. 107; State v. Shelters, 51 Va. 102; State v. Riebe, 27 Minn. 315; Barnum v. State, 15 Ohio 717; Com. v. Brown, 147 Mass. 585. (3) Equally untenable is the contention of defendant that the proceedings should have been dismissed and defendant discharged because the clerk had failed to endorse on the indictment the filing and the date thereof. A paper is filed when delivered to the proper officer and received by him to be kept on file, and it is not within

the power of the clerk by his remissness to balk the action of the grand jury or defeat the purpose of a prosecution.   The mere indorsement of the clerk is no constituent element of the filing, but is only an evidence, and not the sole one, of the filing.   The record in this instance discloses that the indictment was returned in open court, and properly filed, and this is sufficient.   Baker v. Henry, 63 Mo. 519; State v. Grate, 68 Mo. 25; State v. Hogan, 31 Mo. 342; State v. Vincent, 91 Mo. 665; State v. Clark, 18 Mo. 435; State v. Plummer, 55 Mo. App. 291.   This motion, however, should not be reviewed by this court, as the record proper fails to show the filing of same, or the ruling of the court thereon.   No good reason can be perceived why the rules governing motions for new trial, in arrest, and others of that ilk, should not be applicable to this.   Stark v. Zender, 204 Mo. 449; Pennowfsky v. Coerver, 205 Mo. 137.   (4)   After having served timely notice, in writing, on defendant and his attorneys, to produce in court the deposit slip, or ticket, alleged to have been forged (the same being in defendant's possession), there was no impropriety in State's counsel requesting at the opening of the trial that said slip be then produced.   This request being denied, it was proper and necessary to offer the notice theretofore given, together with the return thereon showing the service.   This laid the foundation for the admission of secondary evidence and was not prejudicial to defendant.   State v. Barnett, 110 Mo. App. 592; State v. Sharpless, 212 Mo. 200.   (5)   In the case at bar by overruling the demurrer which directly and specifically raised the question of alleged variance, and by giving and refusing the instructions it did, and by overruling the motion for new trial which again directly submitted this question to the trial court for decision, the court found and affirmatively declared that the alleged variance was not material or prejudicial, and this court will defer to the action of the trial court on

this finding. State v. Carrigan, 210 Mo. 371; State v. Barker, 64 Mo. 285; State v. Smith, 80 Mo. 520; State v. Harl, 137 Mo. 256; State v. Sharp, 106 Mo. 109; State v. Walters, 144 Mo. 347; State v. Wommack, 70 Mo. 411; State v. Sharp, 71 Mo. 221; State v. Ward, 74 Mo. 255; State v. Melson, 101 Mo. 482; State v. Dale, 141 Mo. 287; State v. Sharpless, 212 Mo. 202. Even in the absence of the statute above alluded to, the alleged variance would not be fatal. State v. Burlingham, 146 Mo. 225; State v. Jackson, 90 Mo. 158; State v. Flora, 109 Mo. 296; State v. Niesman, 101 Mo. App. 507; State v. Blanchard, 74 Iowa 626.

FOX, J.—This cause is now pending before this court upon appeal on the part of Noah Jackson, the defendant, from a judgment of the Clay Circuit Court convicting him of forgery in the second degree.

On September 18, 1907, the grand jury of Clinton county returned in open court an indictment charging defendant with forgery in the second degree, it being alleged that on May 1, 1907, he forged, counterfeited and falsely made a certain evidence of debt, commonly known as a deposit slip or ticket, on the Farmers' Bank of Cameron, purporting to have been made and issued by said bank for the sum of $19,000. There were two counts in the indictment, both being identical, except as to the tenor of the forged instrument, one charging that the evidence of debt purported to be signed "C. E. Packard, Cashier, DeHart," the other purporting to be signed "C. E. Packard, Cashier, D."

On the second day of October, 1907, defendant filed an application for change of venue from Clinton county, charging bias and prejudice on the part of the inhabitants of that and all other counties in the Fifth Judicial district. Thereafter, said application and petition were considered and the change awarded to Clay county, and the cause ordered transferred and the transcript of all proceedings certified, which was ac-

cordingly done. Thereafter, to-wit, February 25, 1908, defendant was duly arraigned and entered a plea of not guilty. June 8, 1908, defendant moved for his discharge, alleging that neither the original indictment nor the transcript disclosed the indorsement of the clerk thereon, showing the filing of the indictment or the date of the filing. This motion was overruled, and defendant thereupon demurred to the indictment, and after the same was determined adversely to him the trial proceeded in due form.

Upon the trial of this cause the evidence developed upon the part of the State tended to prove that at all the times mentioned in the evidence, the Farmers' Bank of Cameron was a banking institution, duly organized and incorporated, and doing business as such under and by virtue of the laws of this State. C. I. Ford was president; N. S. Goodrich, vice-president; C. E. Packard, cashier; H. B. Cooper, assistant cashier; T. W. Parton, chief bookkeeper, and Louis De-Hart, assistant bookkeeper. For several years defendant had been doing business with this institution, at times depositing money therein and at other times borrowing therefrom, he being, at the date of the commission of his offense, indebted thereto in the sum of about $16,000.

On the 8th day of March, 1907, defendant went to the bank about the noon hour, and at that time Louis DeHart and Mr. Ford were present. Said DeHart was at that time acting as receiving teller, and was not acquainted with defendant. When defendant arrived at the bank he told DeHart that he wanted to deposit $100. DeHart asked him to whose credit the deposit should be placed, to which defendant replied, "Noah Jackson." DeHart thereupon inquired if he was Noah Jackson, to which defendant answered in the affirmative, whereupon he produced $100 in currency, and after the same had been counted and received by De-Hart, he asked him for his pass or deposit book, and

defendant said that he did not have the same with him. DeHart thereupon made out a deposit ticket, together with a duplicate thereof, and after signing said duplicate in the name of the cashier, he stamped under the name of Mr. Packard, "Cashier," and to indicate who received the deposit attached either the letter "D" or name "DeHart," and delivered same to defendant. The deposit ticket so delivered to defendant was of the character commonly used by banking institutions for that purpose, and stated in substance that defendant had deposited in the Farmers' Bank of Cameron for his account, $100 in currency. Immediately following this defendant went to a trust company in Cameron and withdrew therefrom the sum of $5,000, which he had theretofore deposited, and in company with another party went to Kansas, where he deposited this money in a bank. About May 1st, defendant returned to Cameron, and a part of his indebtedness being then due, he was notified to make payment. He accordingly went to the bank and gave his note in settlement of that portion of his indebtedness then due. In a few days thereafter, to-wit, about May 1st, defendant again went to the bank and asked where all his money had gone, saying that on the 8th of March he had deposited $19,000, which was more than enough to discharge in full his indebtedness to that institution. On being informed that he had made deposit of no such sum, but to the contrary had deposited but $100, he contended that he had deposited $19,000, and had the bank's deposit slip or receipt disclosing that condition. He steadfastly contended that this amount was due him, and that DeHart had received $19,000 on March 8th, and had issued the deposit slip which he then and there presented. This ticket disclosed upon its face a deposit of $11,000 in currency and $8,000 in gold. Defendant, upon being asked where he had gotten this money, said that $5,000 of the amount had been received by him from the trust company. Upon

being asked from what source he had received the rest he said: ''I will show it at the right time; you would not believe me if I would tell you.'' He again accused said DeHart of receiving the $19,000 and issuing the ticket in the form and for the amount disclosed by the ticket.   Defendant passed the ticket around among various parties to convince them that this amount had been deposited by him.   The ticket had been altered by prefixing a one and adding a cipher to the $100 in currency, making same read $11,000 instead of $100. The item of $8,000 in gold had been inserted immediately below the entry of $11,000.   The evidence disclosed that these alterations were made after the delivery to defendant of the deposit ticket, and that the figures thereto added were not figures made by De-Hart or other officers of the bank.

At the close of the evidence the defendant requested that the court give an instruction to the jury in the nature of a demurrer to the evidence, directing them that under the law and the evidence they would find the defendant not guilty.   This instruction was by the court refused, to which action and ruling of the court the defendant then and there at the time excepted.   The court then gave instructions to the jury fully covering every phase of this case to which the testimony was applicable.   It is unnecessary to here reproduce the instructions given and those refused. We will give them such attention as may be required during the course of .the opinion.   The cause being submitted to the jury they returned a verdict finding the defendant guilty as charged in the second count of the indictment and assessed his punishment at a term of five years in the penitentiary.   Timely motions for new trial and in arrest of judgment were filed by the defendant and by the court taken up and overruled. Sentence and judgment followed in accordance with the verdict.   From this judgment the defendant prose-

cuted his appeal to this court and the record is now before us for consideration.

## OPINION.

The record in this cause presents numerous assignments of error as a basis for the reversal of this judgment. We will give the complaints made by the appellant, during the course of the opinion, such attention as their importance requires and merits.

Preliminary to the treatment of the assignments of error on the part of the appellant it is well that the suggestion of the learned Attorney-General, that nothing but the record proper can be considered, first be disposed of. The insistence upon this proposition is that the defendant was duly sentenced and judgment pronounced before his motion for a new trial was passed upon, and upon this state of the record it is insisted that when the defendant was asked, in the presence of his counsel, if he had any legal cause to show why judgment should not be pronounced, it was his duty to call the court's attention to the fact that his motion for new trial was pending, and failing in this he must be held to have waived the same. The record in this cause discloses that after the return of the verdict finding the defendant guilty and before sentence and judgment was rendered, the defendant, within the time prescribed by statute, filed his motion for new trial. Subsequent to the filing of the motion for new trial and while it was pending, the court sentenced and entered judgment against the defendant, and afterwards formally overruled the motion for a new trial.

We have reached the conclusion that the insistence of the Attorney-General, under the provisions of the statute, cannot be maintained. The defendant filed his motion within the statutory period after the re-

turn of the verdict, and before the rendition of judgment; hence it follows, notwithstanding the court did not before sentence and judgment overrule the motion for new trial, yet the court must be presumed to have full knowledge of its records and to know that the motion for new trial had been filed and was then pending.  The only logical conclusion that can be reached is that the sentence and judgment rendered against the defendant during the pendency of the motion for new trial was in effect an overruling of such motion.  This being the effect of the sentence and judgment pending the motion for new trial, and then subsequently formally overruling such motion, we are of the opinion that the defendant has a right to a full hearing upon the errors assigned in his motion for new trial.  Manifestly there was no necessity for the defendant, when the court propounded the question to him as to whether he had anything to say why he should not be sentenced, to state that his motion for new trial alleged the grounds and reasons why he should not be sentenced, for presumptively the court must be held to have had knowledge of the fact that the motion for new trial had been filed and was pending, as well as the grounds alleged in it.  We repeat, that the rendering of the judgment against the defendant while the motion for new trial was pending was in effect a denial of such motion.

The disclosures of the record in this cause are unlike those presented in the cases of State v. Pritchett, 219 Mo. 696, and State v. Fraser, 220 Mo. 34. In those cases the records disclosed that after the return of the verdicts judgments were entered upon such verdicts, and subsequent to sentence and judgment defendants filed their motions for new trial.  In other words, the motions for new trial were not filed until sentence and judgment had been entered against the defendants.  Therefore it follows that those cases were controlled by the provisions of section 2689, Re-

vised Statutes 1899, which expressly provides that the motion for new trial shall be filed before judgment is rendered in the cause, and this provision of the statute was held, in the cases to which we have made reference, to be mandatory.

Directing our attention to the complaints of the appellant.

## I.

It is insisted by learned counsel for appellant that the court committed error in overruling the motion for discharge of the defendant, on the ground that the court was without jurisdiction to try him on the indictment before the court. This motion, which it is insisted should have been sustained, was predicated upon the ground that the clerk had failed to indorse on the indictment the filing and the date thereof.

At the very threshold of the consideration of this motion we find that the record proper fails to disclose the filing of any such motion or any ruling of the court thereon. If the rules applicable to motions for new trial and in arrest of judgment are applicable to motions of this character, as announced in Stark v. Zehnder, 204 Mo. l. c. 449; Pennowfsky v. Coerver, 205 Mo. l. c. 137, and cases therein cited, then it would logically follow that this motion is not before us for review. While it is true the bill of exceptions preserves this motion and recites the action of the court upon it, and the exceptions of the defendant to such action, yet, as has repeatedly been held by this court, this is insufficient to show that in fact the motion was filed. When we come to look to the filing of a motion which this court is called upon to review, we seek the record proper, and there ascertain if the motion was in fact filed, and as to whether or not the court took any action upon such motion. We have carefully

analyzed this record, and unless we have overlooked some of the recitations in the record proper it absolutely fails to disclose that a motion of this character was filed, or that the court ever acted upon it.

But aside from all this, there is no merit in this motion. The record in this cause discloses that on the 13th day of September, 1907, the sheriff of Clinton county, Missouri, returned into open court the writ commanding him to summon a grand jury, duly executed. Some of those served were excused and others summoned in their stead. The record discloses that the grand jurors summoned as heretofore stated, appeared at the time and place as ordered by the court, and were duly impaneled, sworn and charged and instructed as the law requires. The court appointed W. A. White as foreman of said body and they were then ordered by the court to retire to their room to consider of their presentments and indictments. The record further discloses that on the 18th day of September, 1907, the same being the 9th day of the regular term of said court, the grand jurors appeared in open court, and by their foreman in the presence of his fellows, presented and made return of the indictment of the State of Missouri v. Noah Jackson, forgery, which said indictment, the record discloses, was by the court examined and found indorsed a true bill by the foreman and signed by the presecuting attorney, which said indictment was ordered filed by the court. Then follows in the record a copy of the indictment as returned by the grand jury into court, and is the indictment as is shown by the record in this cause upon which the defendant was tried and convicted.

In State v. Grate, 68 Mo. 22, this court, speaking through Judge SHERWOOD, first refers to the statute that indictments found and presentments made by grand juries shall be presented by their foreman, in their presence, to the court, and shall be filed and

remain as records of such court.  Discussing this stat-
ute it was said in that case that "it is out of the power
of the clerk, by his remissness, to balk the action of
the grand jury.  The indictment became a record of
the court when returned by the grand jury in accord-
ance with the statutory provision above noted."  A
similar rule was announced in State v. Clark, 18 Mo.
432.  In the case last cited it was said that there was
no necessity for spreading the indictment in full upon
the records of the court at any time, and while it
is said in that case that it was the duty of the court
to have ordered the clerk to indorse the time of the
filing of the indictment in court and this would have
placed the whole matter right, yet it was expressly
ruled that there was no ground for sustaining the
defendant's motion to dismiss the cause.  The failure
of the clerk to indorse on the indictment the filing and
the date of the return of such indictment into court
could not authorize the court to discharge the defend-
ant.  In Baker v. Henry, 63 Mo. 517, it was expressly
ruled that in contemplation of law the presentation
and delivery of the paper to the court or officer is
the filing which dates from its receipt by the clerk
and lodgment in his office.

When this indictment was returned into open
court, presented to the court and deposited with the
clerk, it was, in contemplation of law, filed.  The in-
dorsement by the clerk simply furnishes evidence of
the filing.  The entire record in this cause discloses
that the indictment upon which the defendant was
tried was the one returned into open court by the
grand jury and presented to the court and deposited
with the clerk by the foreman of the grand jury.  This
was fully recognized by the defendant himself.  He
executed a bond to answer the indictment returned
into open court; he entered his plea of not guilty to
this indictment; made application for a change of
venue, and the transcript of the proceedings from the

circuit court of Clinton county to that of Clay county shows clearly that it was the indictment as returned into open court by the grand jury of Clinton county. While as heretofore indicated, the record presented in this cause is insufficient to authorize a review of the action of the court upon such motion, however, we are of the opinion that the motion as preserved in the bill of exceptions is without merit.

## II.

This brings us to the consideration of the contention upon which counsel for appellant seem to chiefly rely for a reversal of this judgment, that is, that the deposit slip or deposit ticket issued by the Farmers' Bank of Cameron, Missouri, designated in the indictment, is not the subject of forgery. To fully appreciate this proposition it is perhaps well to reproduce the challenge to the sufficiency of this indictment as contained in the brief of learned counsel for appellant. Counsel make the inquiry: "Is the indictment good in this case?" Then assert, "It charges the defendant with having forged a certain evidence of debt, commonly known as a deposit slip . . . or deposit ticket, on the Farmers' Bank of Cameron, Missouri, and undertakes to set out in the indictment the alleged forged instrument *in haec verba,* without a single averment of any extrinsic matter, which could give the instrument alleged to have been forged any force or effect beyond what appears on its face. The deposit slip has no legal validity and affects no legal rights so as to injure another, which should appear from the indictment charging the offense, that such was its legal character, either by the instrument itself or by matter *aliunde* which will show it to be of that character. The indictment fails to comply with this rule." It is further insisted upon this proposition that a deposit slip or deposit ticket as alleged in the indictment, is not such an evidence of debt as comes within

the term "or other evidence of debt" as used in the statute defining this offense. This indictment is predicated upon the provisions of section 2001, which provides: "Every person who shall forge or counterfeit, or falsely make or alter, or cause to procure to be forged, counterfeited or falsely made or altered: First, any promissory note, bill of exchange, draft, check, certificate of deposit or other evidence of debt, being or purporting to be made or issued by any bank incorporated under the laws of this State, or of any other State, Territory, government or country; or, second, any order or check being or purporting to be drawn on any such incorporated bank or any cashier thereof, by any other person, company or corporation, shall, upon conviction, be adjudged guilty of forgery in the second degree."

It will be observed that this section of the statute specifically designates certain instruments which are the subject of forgery, that is to say, promissory notes, bills of exchange, drafts, checks, certificates of deposit; then concludes, "or other evidence of debt being or purporting to be made or issued by any bank incorporated under the laws of this State, or of any other State," etc.

The contention of learned counsel for appellant is that the deposit slip or deposit ticket as alleged in the indictment, is not such an evidence of debt as is contemplated by the provisions of the section of the statute indicated, which would subject the persons forging, altering or counterfeiting such slips or tickets to the charge of forgery under the provisions of that section.

After a most careful consideration of all the authorities applicable to this proposition we are unable to give our assent to this insistence. Our attention upon this proposition is directed by counsel for appellant to the cases of State v. Schuchmann, 133 Mo. 111; and State v. Krueger, 134 Mo. 262. In the

Schuchmann case it was held that the term "other buildings" as used in the Revised Statutes of 1889, section 3526, making it burglary for any person to break and enter any shop, store, booth, tent, warehouse or other building, etc., means a building of like kind to those enumerated, and does not therefore embrace a chicken-house building. The same principle was announced in the Krueger case.

The deposit slip or ticket as alleged in the indictment is substantially an acknowledgment that so much money was deposited by the defendant to his credit in the Farmers' Bank of Cameron. In the indictment it is charged that the Farmers' Bank of Cameron issued this deposit slip or ticket and that it was an evidence of debt, and in our opinion it does not infringe upon the rule as announced in the cases to which our attention has been called. It may be that a chicken-house building is not of like kind to a shop, store, booth, tent or warehouse, but the statute now under discussion enumerates promissory notes, bills of exchange, checks, drafts and certificates of deposit, and in our opinion the deposit slip or ticket alleged in the indictment in this case is at least a like kind to a certificate of deposit designated in the statute. It will certainly not be contended that it must be identical with the kinds of evidences of debt as enumerated, for the Schuchmann case only requires that it shall be of like kind. A certificate of deposit and the deposit slip or ticket as alleged in the indictment are used for the same purpose—of indicating to the depositor to whom the slip is delivered that so much money is deposited in the bank that issues the paper. The certificate of deposit, it is true, is more formal, yet so far as indicating that the money of the depositor has been placed in the bank, it does not do it more effectively than the deposit slip alleged in the indictment, which is daily used by hundreds and thousands of banks in this country in the transaction of

their business. That the deposit slip as alleged in the indictment, which, in substance simply states that the defendant deposited so much money in the bank, is an evidence of debt, we think is too plain for discussion.

It certainly will not be seriously contended that in a dispute between the bank and a depositor as to the amount of a deposit, this deposit slip or ticket would not be of the most highly important evidence in settling a controversy between the depositor and the bank as to the amount of money deposited. The very purpose of the issuance by the bank of a deposit slip and its delivery to the depositor is to furnish evidence to him that he has deposited in the bank the amount of money designated in such deposit slip. While it may be true that this deposit slip is not a negotiable instrument, yet its non-negotiability falls far short of in any way destroying or affecting the element of evidence of debt manifested upon the face of such deposit slip.

In the civil case of First National Bank v. Clark, 134 N. Y. 368, a case cited by appellant, Judge PARKER fully recognized that a deposit slip is an evidence of debt. He says: "The use of a deposit slip is well understood. It constitutes an acknowledgment that the amount of money named therein has been received." It is true that in the usual and ordinary course of banking these deposit slips are not used with the view of paying money upon the presentation of the slip to the bank, for it may be, as is said by Judge PARKER in the case last cited, that all or nearly all of the money may be checked out at the moment of making the deposit slip; but it is, as is held in that case, an evidence of debt; in other words, an acknowledgment that the amount of money named therein has been received. It may be conceded that a deposit slip

would not furnish the basis of a cause of action similar to a promissory note, yet that fact would in no way affect the question as to whether or not it was an evidence of debt. But, as Judge PARKER says, in a dispute between the bank and depositor as to the amount of deposit, it would become important as evidence. Take the facts as applicable to this proposition in the case at bar. If this defendant had instituted suit against the Farmers' Bank of Cameron to recover $19,000 for money had and received, which appeared upon the face of this slip, is there any doubt but what upon the trial of that case, when the plaintiff offered in evidence this deposit slip, the signature of the cashier being acknowledged as genuine, that would not make out a prima-facie case of indebtedness on the part of the bank to the plaintiff? There can be none. The deposit slip would clearly be. admissible in evidence, and in fact in the absence of any showing to the contrary that the money was had and received or had not been drawn out on checks or otherwise, it would authorize a recovery for the $19,000; hence it logically follows that it is an evidence of debt. If it was not and was a mere worthless piece of paper it would be inadmissible in evidence.

In Hotchkiss v. Mosher, 48 N. Y. 478, it was held that the certificate was an acknowledgment of so much money deposited with the bank. "It was of the same force and effect as a receipt for money," and it was said in that case that "a simple certificate like the one in question is not the basis of an action like a promise in writing, but would be evidence, like a receipt, to raise an implied promise to pay in an action for money had and received." Manifestly that case treated the certificate as an evidence of debt, otherwise it would not have been admissible in evidence.

Our attention is also directed by counsel for appellant to the case of Bank v. Bank of Kansas City, 102 Mo. App. 357. Manifestly that case furnishes

no support to the contention that a deposit slip does
not constitute any evidence of debt. On the contrary,
when the case is fully read, it indicates very clearly
that the court construes a duplicate deposit slip which
is always handed to the depositor, as an evidence of
the transaction. In other words, as evidence of the
amount of money deposited in the bank. In discussing
that case Judge ELLISON said: ''The 'deposit slip'
made out at the time by the cashier in Shinn's pres-
ence said nothing of the deposit being for any pur-
pose. Such slip or ticket is said to be 'a note to
help the memory.' [Morse on Banking, sec. 290.]
The cashier stated that he gave Shinn a duplicate.
Shinn does not deny this. It must in reason be true,
for the deposit was not put on a pass book and it
seems out of accord with business principles that
Shinn would have left the bank without taking with
him any evidence of the transaction.'' Clearly that
court fully recognized the usual methods in transact-
ing business with banks, as well as the force and effect
of a duplicate slip which is given to the depositor;
and the court upon the facts developed at the trial
reached the conclusion that the bank must have given
Shinn a duplicate deposit slip, for it was said that
this deposit was not put on a pass book, and it would
be out of accord with business principles for Shinn
to have left the bank without taking with him any evi-
dence of the transaction. This case, as well as numer-
ous other cases, clearly indicates that when it is said
that a deposit slip or deposit ticket is said to be a
note to help the memory, reference is made to the
deposit slip or ticket retained by the bank; but the
duplicate deposit slip which is handed to the depositor
is issued to him as an evidence of the amount of his
deposit; and while it is true that in a contest between
the depositor and the bank for money had and received
this slip would not be conclusive evidence of the lia-
bility of the bank and would be susceptible of ex-

planation that the amount of the deposit as evidenced by such deposit slip had been drawn out of the bank by check or otherwise, but this by no means changes the nature and character of such duplicate deposit slip or lessens its force and effect as an acknowledgment that so much money has been deposited in the bank by the depositor.

Our attention is also directed to the case of Weisinger v. Bank, 10 Lea (Tenn.) 330. An examination of that case demonstrates very clearly that it has no application to the facts in the case at bar. There the son of the party making the deposit signed a deposit slip to be deposited with the bank. The bank did not undertake to issue any certificate or duplicate deposit slip to the depositor; hence it was ruled in that case that the deposit slip as signed by the young man making the deposit for his father was merely a memorandum to guide the bank in making the entries in the book. In other words, a note to help the memory. The facts in that case are widely different from the case at bar, where the bank issued a duplicate deposit slip, not for the purpose of helping the memory of the cashier of the bank in making entries, for this duplicate deposit slip passes out of the hands of the bank and is issued to the depositor, and is issued but for one purpose, that is, to furnish to the depositor evidence of the amount of money he has deposited with the bank, and unless such money deposited is drawn out by the depositor by check or otherwise, the depositor is entitled to recover such money in an action for money had and received, upon the introduction of his deposit slip, which prima-facie shows that he has that amount of money deposited in said bank.

In Long, Executrix, v. Straus, 107 Ind. 94, it was expressly ruled that an action might be maintained upon a receipt in this form: ''Received of Joseph S. Long sixteen hundred dollars, on deposit, in National

currency," signed, "Straus Bros." In the discussion of the propositions involved in that case the court very clearly said that "the deposit of money is a transaction well known to the law, and it is one out of which well defined legal rights emerge; chief among these rights is that of the depositor to receive his own again, and a correlative of this right is the implied promise of the person who receives money on deposit to return it to the depositor. . . . It would shock everyone's sense of justice to affirm that a depositor could not get back his money unless there is an express promise to return it to him, but this cannot be affirmed without doing violence to the settled principles of jurisprudence." Again, it is said by the Court of Appeals of New York, that "money on deposit means, *ex vi termini,* money placed where the owner can command it at any time." [Curtis v. Leavitt, 15 N. Y. 9, 265.]

We stop here to inquire, if the deposit slip or ticket as alleged in the indictment, was not issued and delivered to the defendant for the purpose of furnishing him evidence as to how much money the bank owed him by reason of such deposit, then what was the necessity of issuing it at all? Unless these deposit slips which are in such common use by all the banks over the country are issued for the purpose of furnishing evidence of the indebtedness of the bank by reason of such deposit slips, then clearly they should be treated as mere worthless paper. If the deposit slip or ticket as alleged in the indictment is not to be construed as an evidence of debt, and it is to be held that depositors indiscriminately may make a deposit of $50 in a bank, add a cipher to it and make it $500, or make a deposit of $500, add a cipher and make it $5,000, with the privilege of entering the courts of the country contesting for the recovery of the amount in the altered instrument with the bank for money had and received, without subjecting themselves to

a criminal prosecution, then we confess that the banks doing business in this State would have very little or no protection against the perpetration of such frauds, and would be compelled to cease the long established method of doing business by the issuance of deposit slips to depositors. To so hold would be but an invitation to the criminal classes of our population to unjustly seek the money and property of the business institutions of the country, as well as a humiliation to the lawmaking power of this great commonwealth in failing to provide the administering of proper punishment for the perpetration of frauds of this character.

Giving attention to the other complaint challenging the validity of the indictment in this cause, that is, that "the deposit slip has no legal validity and affects no legal rights so as to injure another," what was said in State v. Sharpless, 212 Mo. l. c. 194 and 195, is applicable to this subject, namely: "It is fundamental that one of the essential elements of this crime is the intent to defraud, and it is only essential that the instrument to be the subject of forgery should be of some apparent legal efficacy for injury to another. On the other hand, instruments which upon their face are utterly valueless and have no binding force or effect for any purpose of harm, liability to injury to anyone, cannot be the subject of forgery. This rule is fully recognized both at common law and in the highest courts of the several States of the Union. [State v. Cordray, 200 Mo. 29; Colson v. Com., 110 Ky. 233; King v. State, 43 Fla. l. c. 218, 219; 19 Cyc. Law and Proc., 1370, and cases cited in note 94.]"

In People v. Tomlinson, 35 Cal. 503, the object and purposes of the statute against forgeries were very clearly and tersely stated. It was said: "The purpose of the statute against forgeries is to protect society against fabrication, falsification, and the utter-

ing, publishing and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, or create some liability, or work some prejudice in law to another in his rights of person or property. Hence, without much conflict, if any, it has been held from the outset that the indictment must show that the instrument in question can be made available in law to work the intended fraud or injury.''

Applying the rules of law as indicated in the cases last cited, we are of the opinion that the charge in the indictment in the case at bar fully meets all the requirements of the rules announced in those cases. We have heretofore fully discussed the nature and character of the deposit slip as well as its force and effect. The indictment charges that this deposit slip was an evidence of debt, and the deposit slip was embraced in the indictment and shows upon its face its legal efficacy, and clearly furnishes evidence of the rights and claims of the depositor to whom such duplicate slip was issued. This deposit slip manifestly purports upon its face to be good and valid for the purposes for which it was intended and which might operate to the prejudice of the rights of another; hence there was no necessity for any allegation in the indictment of any extrinsic matter to give the instrument alleged to have been forged any force and effect beyond what appears on its face. The instrument speaks for itself, and clearly shows that it is such an instrument as is susceptible of affecting legal rights so as to injure another; hence it follows that upon this complaint the ruling must be adverse to the appellant.

It is not out of place to direct attention to some of the cases in this State as indicative of the views of this court upon the subject of the offense of forgery. While in the case of State v. Gullette, 121 Mo. 447, the offense of forgery charged was under a different

provision of the statute, yet the views of the court as expressed in that case indicate very clearly that this court is not disposed to "quibble" about the name of the instrument charged to have been forged. It was there said: "It was unnecessary that the order in question, if genuine, should have been addressed to any person by name. This ruling has passed into precedent. [People v. Krummer, 4 Park. Crim. 217.] Nor was it necessary that the instrument employed with intent to defraud should be entitled in strictness to bear the title or appellation of a bill of exchange or of a promissory note. There need be no formality about it, nor need it be designated by any certain name. Any instrument or writing being, or purporting to be, the act of another, by which any pecuniary demand or obligation shall be, or purport to be, transferred, created, increased, discharged or diminished, or by which any rights or property whatsoever shall be, or purport to be, transferred, etc., if made with intent to defraud is amply sufficient to come within the penal prohibitions of the statute. 'The question is whether, upon its face, it [the writing] will have the effect to defraud those who may act upon it as genuine, or the person in whose name it is forged.' . . . And it does not lie in the mouth of the forger to claim immunity for his crime because, if the man he imposed upon had been vigilant, he would not have been deceived."

In the case of State v. Eades, 68 Mo. 150, the forgery charged was that defendant forged a certificate of indebtedness of the City of Kansas. It was insisted in that case as in the case at bar that the instrument set out in the indictment was not such as can be the subject of forgery, because the charter of the City of Kansas does not confer on the Mayor and Common Council the power to issue the same. In treating of that proposition this court, speaking through Judge NORTON, said: "Upon a statute of

New York, similar to our own, which came before the court for construction in the case of People v. Krummer, 4 Park, Crim. 217, it was held that 'we are never called upon to determine whether in legal construc-struction the false instrument or writing is an instrument of a particular name or character. It is a matter of perfect indifference whether it possesses or not the legal requisites of a bill of exchange, or an order for the payment of money or the delivery of property. The question is whether, on its face, it will have the effect to defraud those who may act on it as genuine, or the person whose name is forged. It is not essential that the person, in whose name it purports to be made, should have the legal capacity to make it, nor that the person to whom it is directed be bound to act upon it, as genuine, or have a remedy over. Though all the parties to a bill of exchange are purely fictitious, if it be passed as genuine, it is regarded by the law as forgery. The law looks only to the falsity of the instrument and the fraudulent use of it as genuine.' "

Also in the case of State v. Kattlemann, 35 Mo. 105, it was expressly ruled by this court that "altering the date of a receipt from the 11th of April to the 1st of April, if done fraudulently, that is, if done to prejudice the rights of another, and the more easily or successfully to enable the party altering it to obtain a double credit for money paid, is a material alteration, and sufficient to constitute the offense of forgery."

Now, we repeat, that while the cases last cited were predicated upon provisions of the statute unlike the one in the case at bar, yet applying the reasoning in those cases to the character of the instrument in the case now before us, it may well be said that if the instrument as set out in the indictment is an evidence of debt, it is a matter of little concern as to what you call that instrument—whether a certificate

of deposit, a deposit slip or a deposit ticket; the question is as to whether or not such instrument purports on its face to be good and valid for the purposes for which it was intended and which may operate to the prejudice of the rights of another.

That the deposit slip or ticket as alleged in the indictment is an evidence of debt as contemplated by the provisions of the statute upon which this indictment is predicated, and is the subject of forgery, we have no doubt. In our opinion the provisions of this statute are broad enough to embrace every character of paper issued by the banks designated in the statute which furnish evidence to those persons dealing with the banks of the amount of any indebtedness due them. We are unwilling to say that the deposit slip or ticket alleged in the indictment, the issuance of which by the bank was but following one of the most common and usual methods of transacting business by the bank with depositors, is not, in contemplation of that statute, evidence of debt. The ruling upon this proposition must be adverse to the contention of the learned counsel for appellant.

## III.

It is next insisted that there is a fatal variance between the deposit slip or deposit ticket alleged in the indictment and the evidence offered in proof thereof by the State. It is sufficient to say that the law applicable to this proposition is well settled. Section 2534, Revised Statutes 1899, provides that "whenever . . . there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof . . . in the name or description of any matter or thing whatsoever therein named or described, . . . such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial

shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant.''

In State v. Carragin, 210 Mo. 351, it was insisted that there was a fatal variance between the instrument described in the information and the note offered in evidence. The information in that case did not allege and set out in its description of the forged instrument the indorsement of the defendant Carragin thereon, but the note offered in evidence had the indorsement of the defendant, the maker of the note, on it. It was expressly ruled in that case that the circuit court failing to find that there was any material variance, hence the omission in the information of the genuine indorsement of the defendant furnished no ground for the reversal of the judgment. It was also held in that case that the mere omission of the genuine indorsement of the defendant on the note did not constitute reversible error.

Numerous other cases by this court have made similar rulings, and in the comparatively recent case of State v. Sharpless, 212 Mo. 1. c. 202, the rule as announced in the case of State v. Carragin, supra, was unqualifiedly approved.

## IV.

This brings us to the consideration of the insistence on the part of counsel for appellant that the testimony as developed upon the trial of this case did not tend to prove that the deposit slip set out in the indictment was signed at all by any officer of the bank. We shall not undertake to reproduce all of the testimony applicable to this proposition, but it is sufficient to say that we have read in detail the evidence of the witnesses testifying as to the deposit slip and signatures as alleged in the indictment, and in our opinion the testimony very clearly tended to prove that the

deposit slip alleged in the indictment, and which was presented by the defendant as genuine, was signed by the cashier, Packard, with the addition "DeHart" or "D," one of the two. Mr. Ford, the president of the bank, in testifying as to what DeHart did, substantially stated that a deposit slip of $100 was made out which recited: "Farmers' Bank of Cameron. Noah Jackson has deposited $100, and DeHart signed 'C. E. Packard, Cashier,' by 'DeHart' or 'D,' one of the two, and placed it on file and he made a duplicate of the same and stamped it with a rubber stamp, 'Duplicate,' and handed it to Mr. Jackson and he took it and went on." Mr. DeHart testified to Jackson coming to the bank and presenting this duplicate slip. On cross-examination he said that of course it looked like his handwriting; he admitted that it was his handwriting. Then he fully testified in detail to the changes and alterations in that duplicate slip. Finally, in testifying about this slip, in answer to the question, "What is your best judgment now, or have you any judgment, as to whether that was the slip you wrote out and handed to him, or the one wrote by some one else?" he answered, "Why, my best judgment was that it was the one I handed him." The inquiry was further made by questions propounded: "That is your best judgment? A. Yes, sir. Q. And it was in your handwriting? A. Yes, sir." N. S. Goodrich testified that when Jackson presented the altered slip DeHart, in conversation with Jackson, stated the following: "Well, DeHart said he made out that ticket for $100 and no more." DeHart was then talking to Jackson about the altered slip that he brought to the bank. This is a sufficient reference to the testimony of the witnesses. That the testimony as indicated clearly shows that the slip as presented to the bank by the defendant and as alleged in the indictment, was signed "C. E. Packard, Cashier, DeHart or D," is, in our opinion, too plain for discussion.

## V.

This leads us to the consideration of the instructions given by the court. We have carefully analyzed such instructions and find that they fully covered every phase of this case to which the testimony was applicable. They required the jury to find every essential element necessary to constitute the offense with which the defendant was charged. The court by instruction numbered 3 fully informed the jury that the defendant was presumed to be innocent, and that it devolved upon the State to prove his guilt beyond a reasonable doubt, and unless the State established his guilt, as charged in the indictmnet, to their satisfaction beyond a reasonable doubt, they should give the defendant the benefit of such doubt and return a verdict of not guilty. In addition to this instruction the court, upon behalf of the defendant, repeated this information to the jury, and emphasized it by saying that it was not enough in a criminal case to justify a verdict of guilty that there may be a strong suspicion or even a strong probability of the guilt of defendant, but the law requires proof so clear and satisfactory as to leave no reasonable doubt of defendant's guilt.

Complaint is particularly made of instruction numbered 4. This instruction was as follows: "The jury are instructed that it is not necessary to prove that defendant is guilty by the testimony of witnesses who may have seen the offense committed. His guilt may be shown by proof of facts and circumstances from which it may be reasonably and satisfactorily inferred." While perhaps it may be said that it would have been more appropriate to have followed approved precedents respecting instructions upon this subject, yet manifestly there was no reversible error in the giving of that instruction, particularly so when taken in connection with the clear instructions of the court as

to the nature and character of the proof necessary to warrant a conviction in the cause.

Complaint is made by the defendant upon the action of the court in refusing instructions requested by the defendant, marked A, B, C, D and E. We deem it unnecessary to reproduce those instructions. They have been carefully analyzed and considered. In our opinion they are fully covered by the instructions given by the court at the request of counsel for the State and those given at the request of the defendant. We repeat, the instructions as given fully covered every subject connected with the offense charged to which the testimony was applicable. There was no such substantial error in the giving or refusing of instructions as was sufficient to authorize this court in reversing this judgment.

## VI.

We have fully indicated our views upon the controlling legal propositions disclosed by the record. The testimony developed upon the trial is fully indicated in the statement of this cause. It was fully sufficient to support the verdict as returned by the jury. The defendant, at the close of the State's evidence, declined to introduce any evidence whatever; he was content with relying upon the insufficiency of the State's showing made upon the trial. There was no effort on the part of the defendant to introduce any witnesses whose testimony would in any way tend to support the claim that $11,000 in currency and $8,000 in gold, as indicated by the deposit slip, had been deposited in the Cameron Bank. The evidence as introduced by the State clearly furnished such a substantial showing as authorized a submission of the cause to the jury, and while as provided by statute, no improper inference should be drawn as to the guilt of the defendant by reason of his failure to testify,

but it is significant that if a deposit was made of
$11,000 in currency and $8,000 in gold, there was not
some one other than the defendant who could give
some explanation as to the possession of this amount
of money by the defendant at that time, and as to
where or from whom such money was obtained; how-
ever, it is unnecessary to discuss that phase of the
case.   As heretofore stated, the testimony as intro-
duced by the State fully supports the verdict; in fact,
we are unable to comprehend how the jury could have
reached any other conclusion under the facts as de-
veloped in this cause.

Finding no reversible error, the judgment of the
trial court should be affirmed, and it is so ordered.   All
concur.