THE STATE v. BEN WOLZENSKI, Appellant.—105 S. W. (2d) 905.

Court en Banc, June 5, 1937.

1182

W. T. Robert McMillin for appellant.

Roy McKittrick, Attorney General, and Wm. W. Barnes, Assistant Attorney General, for respondent.

BOHLING, C.—By information Ben Wolzenski, appellant, Gus Wolzenski and Vito Lodato were charged with grand larceny, the theft of a motor vehicle. Upon severance granted, appellant was found guilty and appeals from a judgment imposing a sentence of two years' imprisonment in the intermediate reformatory.

Jake Goodman's 1930 Model A Ford coupe was stolen from in front of his home in Leadwood, St. Francois County, Missouri, about 1:30 A. M. June 26, 1934. Bert Whaley, a night watchman at Leadwood, saw a Ford roadster, occupied by three men, drive up to the coupe. These men had on "greasy" clothes—clothes like mechanics wear. One was some taller than the other two. The taller man, later positively identified by Whaley as Gus Wolzenski, got out of the roadster and into the coupe and drove the coupe away, following the roadster, traveling east. The identification was possible by reason of the street lights. Whaley reported the theft to Mr. Goodman, who telephoned the information to Trooper Koch, of the Highway Patrol, at Desloge. Trooper Koch immediately went out on Highway 61 and within a short distance (about a mile from his home and five and a half miles from Leadwood) stopped a Ford roadster, occupied by Gus Wolzenski. After questioning Wolzenski and taking the license number (Missouri 1934 No. 81-825) and the motor number of the roadster, he proceeded to Leadwood. He there interviewed Mr. Whaley. He then telephoned Trooper White at Kirkwood and started toward St. Louis on Highway 61. About 25 miles or so out of Leadwood, he stopped at the Ozark cafe, an all-night service station, and interviewed Paul Hedgcorth. Mr. Hedgcorth testified he was on duty at the Ozark cafe the night of June 25, 1934, and serviced a Ford coupe; that the coupe was occupied by two men, each having on greasy, dirty clothing, and one having a scar on his face—the defendant, Ben Wolzenski; and that he recognized the Ford coupe as one in which he had ridden a short time before with Mr. Goodman. Trooper Koch continued north on Highway 61 and, within a short distance, from Mr. Goodman's Ford coupe, parked on the right shoulder of the highway and abandoned. He then went to Festus where, about 3:00 A. M., he met Trooper White, who had the defendants under arrest. Trooper White testified that, after receiving the telephone call, he proceeded south toward Flat River on Highway 61; that he met a Ford roadster bearing 1934 Missouri license No. 81-825 on the Meramec bridge, turned around, and, after pursuing the roadster about a mile and a half or two miles, stopped it; that defendants occupied the car and

all had on greasy, dirty clothing; that he arrested the defendants and brought them to Festus, where he met Koch.

The trial clerk's certificate authenticates the proceedings as "a full, true, correct and complete transcript of the record" in the cause, "including the bill of exceptions, judgment and sentence." This is not a capital case, and the duty rested on appellant to see that the authenticated transcript contained the record entries and proceedings necessary for our review of assigned error. [Sec. 3757, R. S. 1929, Mo. Stat. Ann., p. 3295; State v. Ross, 334 Mo. 870, 874, 69 S. W. (2d) 293, 295(7); State v. Guinn (Mo.), 84 S. W. (2d) 627(2); State v. Little (Mo.), 248 S. W. 926(1).] The complete transcript of the record contains no showing of any ruling by the trial court on appellant's motion for new trial; and, consequently, no exception saved to any action of the trial court on said motion. The movant may abandon, withdraw, or waive the motion for new trial or consent to its being overruled. In State v. Jackson, 221 Mo. 478, 491, 120 S. W. 66, 68, this court, acting on the presumption a trial court has knowledge of its records, held the sentencing and rendition of judgment against a defendant during the pendency of his motion for new trial was in effect an overruling of the motion; and, the record disclosing that defendant's motion for new trial was formally overruled subsequent to the sentencing and entry of judgment, proceeded with its review on the merits. That case makes no mention of any exceptions saved and contains no discussion of any necessity for the saving of exceptions to the overruling of motions for new trial. While the preservation for appellate review of exceptions taken during the progress of a trial, not matters of record proper, was unknown to the ancient common law, exceptions are now allowed to reach matters *dehors* the record proper. [Spotts v. Spotts, 331 Mo. 917, 925(1, 2), 55 S. W. (2d) 977, 980(1-4); State v. Dimmick, 331 Mo. 240, 243(I), 53 S. W. (2d) 262, 263(1, 2); State v. Hardy, 339 Mo. 897, 98 S. W. (2d) 593.] The purpose of appellate review now is the correction of all errors whether matters of record proper or of exception occurring during the progress of the trial; but as a condition precedent to the consideration of alleged error not appearing upon the face of the record proper not only must the issue be duly presented and saved during the progress of the trial but a proper opportunity must have been afforded the trial court to review and revise its own rulings (in criminal cases) by a motion for new trial [Secs. 3733, 3736, R. S. 1929, Mo. Stat. Ann., pp. 3272, 3283] or other appropriate motion. In State v. Harvey, 105 Mo. 316, 317, 16 S. W. 886, we said: "The motion for new trial is no part of the record proper, and we cannot conceive how in the nature of things it has a place in a bill of exceptions, unless the overruling of it formed the basis of an exception, and such an exception was ac-

tually taken and saved when the motion was overruled." [See, also, State v. Parnell, 206 Mo. 723, 725, 105 S. W. 742(1).] Accordingly, we have uniformly held in a long line of decisions that where the bill of exceptions fails to show an exception saved to the overruling of the motion for new trial, errors assigned therein are not preserved for review [The Harvey and Parnell cases, supra; State v. Arrowood (Mo.), 11 S. W. (2d) 1015; State v. Truedell (Mo.), 192 S. W. 404; and Missouri cases cited in 17 C. J., 76, sec. 3339, note 21, and (for civil cases) 3 C. J., p. 969, sec. 865, notes 46-49.] As it is necessary to save exceptions to adverse rulings on motions for new trial and that the bill of exceptions disclose the saving of such exceptions for appellate review of matters of exception, we, absent any showing of record, are not justified in indulging in the presumption that the rendition of judgment was in effect the overruling of the motion for new trial and, in addition, that exceptions were duly saved to the court's action in so ruling. Insofar as State v. Jackson, supra, conflicts herewith, it should be no longer followed.

We, therefore, have only the record proper before us. Appellant makes no complaint as to matters of record proper and we find no error therein. Allocution was granted appellant in the presence of his counsel, and sentence was pronounced and judgment was entered.

■ We have considered, *ex gratia,* the assignments in the motion for new trial sufficiently alleging error for appellate review. They may be disposed of under two assignments. The court promptly sustained appellant's motion to strike certain evidence upon ascertaining sufficient facts on which to base an intelligent ruling. It should not be convicted of error in failing to strike a prior similar voluntary answer in the absence of a specific request to that effect. This, aside from other reasons. ■ The other assignment is that a witness admittedly gave false testimony. The situation differs from that in State v. Moberly, 121 Mo. 604, 611, 26 S. W. 364, 365(3), and other like cases, in that the witness' affidavit in the instant case (to the effect he had concluded he gave false testimony on certain matters) does not set forth what the witness' true knowledge of the facts involved was or his lack of knowledge of the facts he testified to at the trial. With this in view, and under all the circumstances of the case [see 16 C. J., p. 1188, sec. 2715, p. 1233, sec. 2746], considering the witness' testimony at the trial, its corroboration, in part, by the prosecuting witness, the portion of the witness' deposition offered in evidence by appellant contradictory of the witness' affidavit in some material matters, the fact that the record clearly indicates the witness did have some knowledge of the facts mentioned in the affidavit and the counter affidavits of the parties the witness stated in his affidavit had so unduly influenced him as to cause him to give false testimony, we are of opinion the

trial court would have been in the rightful exercise of its discretion had it overruled the assignment in question.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by BOHLING, C., in Division Two is adopted as the opinion of the Court en Banc. *Ellison, J.*, concurs in the result in separate concurring opinion in which *Douglas, Frank, Gantt, Leedy* and *Tipton, JJ.*, and *Hays, C. J.*, concur.

ELLISON, J. (concurring).— ▆ I concur in the result but dissent from that part of the opinion holding an appellant loses all right to have us review assignments of error on matters of exception, if the record fails to show he saved an exception to the overruling of his motion for new trial. There is no denying the fact that the principal opinion of BOHLING, C., is in harmony with a long line of decisions in this court in both criminal and civil cases; and that the majority rule in other jurisdictions is the same. [3 C. J., sec. 802, pp. 895, 898, sec. 864, p. 968; 17 C. J., sec. 3339, p. 76.] But in a few cases the appellate courts have examined assignments of error directed to matters of exception although the record failed to show the saving of an exception to the overruling of a motion for new trial. State v. Jackson, 221 Mo. 478, 491, 120 S. W. 66, 68, is one of these. The principal opinion overrules that case; and thereby, as I see it, binds us more tightly to an archaic and unjust rule, which long ago ought to have been abandoned.

▆ What is an exception for? 3 Corpus Juris, section 810, page 894, says: ''An exception is an objection formally takén to a decision of the court on a matter of law. . . . The office of an exception is to challenge the correctness of the rulings or decisions of the trial court promptly when made, to the end that such rulings or decisions may be corrected by the court, itself, if deemed erroneous, and to lay the foundation for their review, if necessary, by the appropriate appellate tribunal; or, as it has been otherwise stated, to point out wherein the excepting party claims to have been prejudiced by the ruling of the trial court.'' The theory is further expounded in Fornof v. Wilkinsburg, 238 Pa. 614, 620, 86 Atl. 494, as follows: ''The office of an exception to a ruling upon the admission or rejection of testimony is an important one. Where the trial judge rules upon an objection and the ruling is not excepted to, he has a right to assume that it is acquiesced in, and thereafter to guide the trial accordingly. If counsel does not assent to the ruling, he should promptly ask for an exception; this serves to put the trial judge upon immediate notice that his ruling is not acquiesced in, as well as to secure the right to a future review.''

Now bearing in mind the purpose of exception is, first, to advise

the trial court that the exceptor does not abide by the adverse ruling; and, second, to earmark the ruling for incorporation in the bill of exceptions to be taken up on appeal—what is the practical effect of that practice, as applied to the overruling of motions for a new trial? Sometimes, of course, a trial court will make a ruling or order *sua sponte,* but in many if not most instances the exceptor first interposes an objection to some action by the trial court, the court's ruling disallows the objection, and then the exceptor saves his exceptions.

It is entirely proper that the complaining party should formally save his exceptions to a ruling of the court during the progress of the trial (although in probably more than half of the circuits in this State there is an established practice of treating all adverse rulings, or at least rulings disallowing objections already made, to be considered as excepted to.) For in that way the fact is made clear that the exceptor does not abide by the adverse ruling and the court is not ambushed and led into further error of the same kind (if it is error). Then, at the end of the trial the losing party must file a motion for new trial picking out such of his objections and exceptions theretofore made as he desires to preserve for review. In that way the trial court is advised a second time that the exceptor is standing on his exceptions and has singled out the particular ones covered by the motion. Now, when the court overrules that motion for new trial, what possible reason or justice is there in saying that the trial court should be advised a *third* time of the objections and exceptions the objector desires to preserve for appellate review?

It will not do to say the trial court is misled by a failure to except to the overruling of the motion for new trial, and that the court's future conduct of the case will be influenced thereby, because nothing is left to be done, except to grant leave to file a bill of exceptions to allow an appeal, and to approve and permit the filing of the bill of exceptions. And when the appellant follows up the adverse ruling on his motion for new trial by obtaining leave to file a bill of exceptions and praying an appeal, how can the court think otherwise than that the appellant is standing on the assignments of error in his motion for new trial?

Now it is true that the statute provides for the saving of exceptions. In the code of civil procedure Section 1008, Revised Statutes 1929 (Mo. Stat. Ann., p. 1275) provides: "Whenever, in the progress of any trial in any civil suit pending in any court of record, either party shall except to the opinion of the court, and shall write his exception and pray the court to allow and sign the same, the person composing the court shall, if such bill be true, sign the same."

Section 1009 provides when such exceptions must be saved and filed, and for the allowance of bills of exception. And Section

3695, Revised Statutes 1929 (Mo. Stat. Ann., p. 3251), makes the provisions of the code of civil procedure applicable to criminal cases. But there is nothing in any of these indicating the Legislature had any express purpose to invalidate an appeal as to matters of exception unless an exception was saved to the overruling of the motion for new trial. The statute by its terms refers to exceptions taken during "the progress of the trial." And when it is considered that the real purpose of a motion for new trial is not only to give the trial court a chance to review and correct its own errors, but to lay a basis for the preservation of these errors for appellate review by the filing of a bill of exceptions, it is not only unjust but illogical to say that the appellant must save exceptions in the taking of that final step, which is really a part of the procedure for the appeal.

It is said in State v. Harvey, 105 Mo. 316, 317, 16 S. W. 886, quoted in the principal opinion, that a motion for new trial is not part of the record proper, and that it has no place in a bill of exceptions unless an exception was actually taken to the overruling thereof. But the part of the record in which a motion belongs—whether in the record proper or the bill of exceptions—is governed by its *nature*. There is no concealing the fact that the doctrine which we have enforced through all these years is harsh and unjustifiable.

In many a case in this and other Missouri appellate courts an appellant, in both civil and criminal ·cases—and I stress and latter where life and liberty are involved—has been cut off without any ground of appeal left to stand on, merely because the bill of exceptions failed to show he had saved an exception to the overruling of his motion for new trial, although the very purpose of the bill of exceptions, plainly apparent on its face, was to have the appellate court review adverse rulings made below on matters of exception.

The question here is somewhat similar in its general aspects to one considered in Smith v. Ohio Millers Mut. Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920, a civil case, in which the court en banc abandoned the then time honored rule that *term* bills of exception should be filed, preserving exceptions to all adverse rulings during the particular term of court. It all goes back to the days when exceptions had to be taken and written out in longhand as they were interposed, since matters of such importance could not be left to the frailties of memory, and we had no shorthand reporters as we do now. At that early stage of our procedural history every lawyer was accustomed to preserving his own exceptions. But by our shorthand system of reporting we have encouraged the bar to rely on the record made by the court reporter. There can be no possible doubt about the fact that an appellant *does* except to the overruling of his motion for new trial when it is only preliminary to the taking of an appeal and the filing of a bill of exceptions; and no court can be misled merely because the court reporter has failed to note that

an exception to that ruling was preserved. And when it is conceded that appellants are sometimes made to suffer heavy property loss in civil cases or grievous punishment in criminal cases when they had just grounds for appeal on erroneous rulings which were actually objected to and excepted to during the course of the trial, as the bill of exceptions shows, I submit that it is subversive of the very purpose for which this and other like courts were created to deny justice because of such technical irregularities. *Douglas, Frank, Gantt, Leedy* and *Tipton, JJ.,* and *Hays, C. J.,* concur.