THE STATE v. ROBERT KENYON, Appellant.—126 S. W. (2d) 245.

Division Two, February 21, 1939.*

---

*NOTE: Opinion filed at May Term, 1938, August 17, 1938; motion for rehearing filed; motion overruled December 20, 1938; motion to transfer to Court en Banc filed; motion overruled at September Term, February 21, 1939.

*J. N. Burroughs* for appellant.

*Roy McKittrick,* Attorney General, and *W. J. Burke,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant, twenty years of age, was convicted of murder in the first degree, the death penalty being inflicted by the jury, in the Circuit Court of Oregon County on change of venue from Howell County, for shooting and killing Dr. J. C. B. Davis while kidnaping him in the latter county on January 26, 1937. There were five assignments of error in his motion for new trial in the circuit court, only two of which are specific enough to comply with the new trial statute, Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275). One of these challenges the sufficiency of the evidence; the other complains of the reception of testimony from a witness who had remained in the court room during the hearing of the evidence after the rule had been enforced.

The Assignment of Errors in appellant's brief filed in this court complains of several errors not assigned in the motion for new trial, some of these being charged to be apparent on the face of the record proper: (1) that the information was fatally defective; (2) that the record fails to show the jury were kept together in custody of a sheriff during the second day of the trial, and when they returned their verdict; (3) that it does not appear from the record that the

appellant was present at the trial on said day; (4) that the State failed to prove the venue; (5) that error was committed in giving two instructions.

The deceased, Dr. Davis, was a practicing physician in Willow Springs, Missouri, well along in life. He had been married thirty-six years. He was seen by B. F. Thomas of that city to leave his office on the afternoon of January 26, 1937, about five o'clock, and walk away with the appellant. His office girl, Miss Geraldine Frommell, testified that about that hour he departed from the office saying he was going to see his sisters, but in a few minutes returned, and reported that he had to make an emergency call at the home of a man named James about six miles in the country. She saw him get his medical kit from his automobile and leave the latter parked. Thereafter he disappeared until his corpse was found a week later.

In the meantime a ransom note from the doctor to his wife passed through the West Plains post office on the evening of the next day, January 27; his medical kit was found in North Fork Creek in Ozark County on January 30, and a second ransom note addressed to Mrs. Davis was deposited in the U. S. Mail letter box outside the post office door in West Plains, about twenty miles from Willow Springs, sometime between 8 P. M. on February 1 and the next morning. A Special Agent of the Federal Bureau of Investigation saw a man answering appellant's general description drive up alone in a 1937 Ford sedan or coach with Missouri license plate No. 437,154, and deposit something in that mail box at 8:05 P. M. on the night mentioned. Mr. Thomas gave Sargeants Massey and Beach of the State Highway Patrol a description of the man he had seen leave with Dr. Davis on the afternoon of January 28. They arrested appellant at the home of his father, Daniel Kenyon, on February 2. He had a .25 caliber Colt's automatic pistol and his suit case contained a tablet of writing paper. His automobile was a 1937 Ford bearing license No. 437,154, corresponding with that seen to drive up to the West Plains post office.

After prolonged questioning about four o'clock in the morning of February 3 the appellant conducted Col. Casteel and other members of the State Highway Patrol, and Federal agents, to a point on Highway 63 about two miles south of Pomona where the body of Dr. Davis was found lying in the woods near a pond, face down, frozen to the ground, glasses on the nose undisturbed, the right arm extended akimbo with a glove on the hand, the left arm doubled under the body with a check book in the hand. His hat was on the ground about twenty feet away, and his overcoat on. There were two bullet wounds close together almost directly in the back of the head which did not penetrate the skull cavity; three entrance wounds in the back and three exit wounds in the front, of the torso. All of

these went clear through the body. Two of them passed through or near the heart and were instantly fatal. There were skin abrasions on the thumb and middle finger of the right hand made by a bullet. This accounted for six bullets. Two bullets about waist high at the front of the body had not penetrated the underwear and were recovered. Another bullet was later found which had been shot into and remained in the glove on the right hand. These three bullets were miscroscopically compared with test bullets fired through the pistol taken from appellant at the time of his arrest, and in the opinion of Mr. Guinn Tamm, a ballistics expert from the Federal Bureau of Investigation at Washington, all had been shot from the same firearm.

The paper on which the first ransom note was written was compared by Dr. F. M. Miller, examiner of questioned documents from the Federal Bureau of Investigation, with the paper of the writing tablet found in appellant's hand bag when he was arrested, and they proved to be similar. In addition certain handwriting indentations or impressions on the tablet correspond in form and position with words on the last page of the first ransom note, which was written by Dr. Davis. Also the written address on the envelope in which the second ransom note was mailed, and the handwriting of the note itself, were analyzed by this expert and compared with samples of the appellant's handwriting. In the opinion of the expert all were written by the same hand.

After the appellant's arrest and the finding of Dr. Davis' corpse on February 2 and 3, he was taken to the Jackson County jail in Kansas City and there confined for a time. On February 6 he made an oral confession to Colonel Casteel and to certain Federal Agents. On February 8 he signed a written confession, in which he stated he had contemplated kidnaping Dr. Davis for about two weeks. On the evening of January 26, 1937, he went to a grocery store in Willow Springs and inquired where the doctor's office was. Thence the confession continues, so far as need be detailed here:

"I obtained the information there and went directly to Dr. Davis' office where I met Dr. Davis at the door. I told him my wife was sick. He asked me what my name was and I told him it was James. He returned to his office to get his bag. I told him I lived on Highway No. 63 near Pomona, Missouri. He came out of the office with his bag and I told him I had my car and would drive him there and bring him back. This was before dark, around 5:00 P. M. I drove down Highway No. 63 from Willow Springs, Missouri, to North Dora Road, where we turned off towards Dora.

"When we were about ten or twelve miles off Highway No. 63 I stopped the car. I pulled my gun and I changed places with him, making the doctor drive the car, and while we stopped at this time

I pulled the writing pad, which I had obtained at my sister's, . . . and made Dr. Davis write the first ransom note. I do not remember exactly what was said in this note,. but I do remember that he was to pay the ransom of $5,000.00 and that it had to be paid Saturday night which would be January 30, 1937. I did not tell the doctor what denominations of bills I wanted him to pay. The doctor wrote the note and included in the note the type of money wanted, including the four $1,000.00 bills. All I wanted was $5,000.00 from the doctor. I had previously searched the doctor to see whether or not he had a gun on him and after satisfying myself that he did not have a gun, we turned around and came back to West Plains, Missouri, driving on the public square, where I mailed this ransom note to the wife of Dr. Davis.

''I mailed this note myself, dropping it in a mail box on the public square while the doctor was with me and did not go to the Post Office. The doctor did not do much talking while he was in my car. After mailing this first ransom note we left town, driving on the Dora Road about fifteen or eighteen miles, as near as I can recall. We stopped on a bridge on the Dora Road, which is located near North Fork Creek, and I told the doctor to throw his medicine kit in the creek, which he did. We then drove on the Dora Road to Highway No. 14 and after more driving around we went back to Highway No. 63. We went on Highway No. 63 to the North side of Olden, Missouri.

''We stopped on the highway near a pond and I told the doctor to get out of the car and we went in the brush where I was to have him write more ransom notes. He took his check book out of his pocket and wanted me to write a check for $5,000.00 to turn him loose, which I refused to accept. He kept talking to me trying to get me to accept the check, but I would not do it. I had a piece of paper and a pencil and I wanted him to put his check book away and write more ransome notes. I was sitting on the ground and he was standing up. He made a jump for me and I had to shoot him. I emptied my gun into him. I believe the clip in the pistol was full, and, if so, there would be six shells in it. This happened, as near as I can judge, about an hour after I picked the doctor up in Willow Springs, Missouri. . . .

''I wish to state at this time that there was no one taken into my confidence in this matter; that there was no one with me when I kidnaped the doctor and killed him near the pond on Highway No. 63, where his body was found; and that, furthermore, I did not take any money from his person after I had shot him, nor did I take his watch. I also wish to state that, there was no such person as the Nighthawk connected in this case with me and that I just thought of that name when I was questioned in Willow Springs, Missouri, by the officers and believed that that would be the best story to tell.

"At the time I kidnaped the doctor I had no intention of killing him and my only reason for killing him was that I believed he was going to attack me when he made a jump for me and when he did that I emptied my gun in him. . . ."

▉ Counsel representing the appellant on this appeal did not participate in the trial below. He concedes that the motion for new trial is not specific and broad enough to cover several errors which he thinks were committed during the trial. In his brief here he has not assigned any errors which are covered by the motion for new trial, except possibly that there was not sufficient evidence to support the verdict. Assignments of error abandoned in the brief ordinarily will be treated as waived. [State v. Mason, 339 Mo. 874, 98 S. W. (2d) 574.] But in view of the record, and since this is a capital case, we shall ex gratia consider both the valid assignments in the motion for new trial and those made in the brief so far as cognizable.

▉ I. The contention that the evidence was insufficient to support the verdict is clearly untenable. On the facts the State made what might be called almost a perfect case. The appellant's confession checks with the physical facts and eyewitnesses from the time Dr. Davis was lured away from his office until the corpse was found in the woods a week later. The ballistics evidence shows the mortal wounds were inflicted with appellant's pistol. The testimony of the handwriting expert shows the doctor wrote the first ransom note and the appellant the second. The appellant could not present a real defense. He did not testify as a witness, nor was his presence accounted for at the time of the homicide. Practically all the evidence introduced in his behalf attempted to show there were other mysterious characters in the community at the time who might have perpetrated the kidnaping and homicide; and that the appellant was weak-willed and of low mentality. Indeed, counsel, all but admits in his brief that the appellant killed Dr. Davis.

The point really made under this head is that the evidence fails to establish a case of first degree murder; that the superficial, glancing nature of the bullet wounds in the skull corroborates the appellant's confession where he said that Dr. Davis lunged at him while he (appellant) was sitting on the ground and he "had to shoot him. I emptied my gun into him." Also the fact is stressed that the appellant said in his confession he had no intention of killing Dr. Davis when he kidnaped him, and only did so when he believed the doctor was going to attack him. This, counsel argues, negatives deliberation, an essential element in first degree murder.

▉ Here the appellant, by his own admission was in the act of perpetrating a kidnaping to extort ransom, a capital felony under Section 4020, Revised Statutes 1929 (Mo. Stat. Ann., p. 2827).

The victim resisted and the appellant shot and killed him. In such circumstances he will not be heard to claim self-defense. [13 R. C. L., sec. 127, p. 823; 30 C. J., sec. 215, p. 49; State v. King, 342 Mo. 1067, 119 S. W. (2d) 322.] And while it is true that "where the State's evidence shows a killing by the use of a deadly weapon upon a vital part of the body, nothing else appearing, murder in the second degree, from the necessities of the situation, will be presumed," State v. Malone, 327 Mo. 1217, 1228, 39 S. W. (2d) 786, 790; yet there is substantial evidence in this case showing the crime was murder in the first degree. As is said in 30 Corpus Juris, section 350, page 142, "the premeditation or deliberation which is essential for this purpose may be inferred from the circumstances of the killing." This has long been the law in Missouri: State v. McCracken (Mo. Div. 2) 108 S. W. (2d) 372, 374 (5); State v. Cade, 326 Mo. 1132, 1137, 34 S. W. (2d) 82, 83; State v. Simon, 317 Mo. 336, 344, 295 S. W. 1076, 1079; State v. Lucas, 316 Mo. 904, 912, 292 S. W. 714, 716; State v. Walker, 98 Mo. 95, 107, 9 S. W. 646, 651; State v. Talbott, 73 Mo. 347, 356.

The evidence in this case shows the body of Dr. Davis was found lying face down, with his eye glasses resting on his nose undisturbed, overcoat on, the right arm extending akimbo with a glove on the hand, the left arm doubled under the body with a check book in the hand, and the hat lying twenty feet away. The head wounds and the body wounds, made by five bullets, all entered from the back and the two instantaneously fatal wounds passed almost horizontally through the chest. Only the one wound in the right hand could possibly have been fired from any other direction. The appellant testified that he emptied his pistol into the doctor when the latter jumped at him while he was sitting on the ground. The foregoing circumstances belie his statement. Furthermore, considering Dr. Davis' age and the fact that he had submissively permitted the appellant to drive him into the city of West Plains when the first ransom note was mailed, it is extremely improbable that he would have started to attack the appellant, a much younger man, alone in the woods when the latter was armed. And if he had, how could the appellant have shot him five times in the back? The jury well might have found the murder was committed while the victim was offering to pay his $5000 ransom by check, as appellant's statement says he did, and while the appellant was behind him. The evidence amply justified a verdict of guilty of murder in the first degree.

The next specific assignment in the motion for new trial is that the court erred in admitting the testimony of the witness Dwight Brantley, because he remained in the courtroom after the rule had been enforced and the witnesses ordered excluded. Mr. Brantley was special agent in charge of the Kansas City Division of the Federal

Bureau of Investigation. His testimony in the main concerned the questioning of the appellant at Willow Springs after the latter's arrest, and the finding of the body. We do not find anything in this record showing the rule excluding witnesses was enforced. The unverified statement to that effect in the motion for new trial therefore is of no force. [State v. Jackson, 336 Mo. 1069, 1076, 83 S. W. (2d) 87, 91, 103 A. L. R. 339.] Furthermore, when the witness testified no objection was made on that ground, or exception saved. For this reason also the assignment presents nothing for review. [State v. Jackson, supra.]

■ The foregoing are the only assignments in the motion for new trial entitled to consideration. We will say, however, that the other assignments in the motion were of such nature that no substantial right of the appellant is violated by ignoring them. In the brief, appellant's counsel inveighs against the information, set out below. The italics, paragraphing and parentheses are ours.

(1) "Wm. D. Roberts, Prosecuting Attorney within and for the County of Howell and State of Missouri, informs the Court that one Robert Kenyon, on or about the —— day of January, A. D. 1937, at the said County of Howell and State of Missouri, did then and there in and upon one J. C. B. Davis, then and there being feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, *did make an assault,*

(2) "and with a dangerous and deadly weapon, to-wit: a certain pistol, then and there loaded with gunpowder and metal bullets, which he, the said Robert Kenyon, in his hands then and there had and held, at and against him, the said J. C. B. Davis, then and there feloniously, on purpose and of his malice aforethought, willfully, deliberately, and premeditatedly did shoot off and discharge,

(3) "and with the pistol aforesaid, and the gunpowder and metal bullets aforesaid, then and there *feloniously,* on purpose and of his malice aforethought, willfully, deliberately, and premeditatedly, did shoot, strike, penetrate and wound him, the said J. C. B. Davis, in and upon the head and body of him, the said J. C. B. Davis, giving to him the said J. C. B. Davis, *then and there* with a dangerous and deadly weapon, to-wit, the pistol aforesaid, and the gunpowder and metal bullets aforesaid, in and upon the head and body of him, the said J. C. B. Davis, one mortal wound, of which said mortal wound the said J. C. B. Davis then and there instantly died.

(4) "And so the said Wm. D. Roberts, Prosecuting Attorney aforesaid, upon his official oath aforesaid, doth say that he, the said Robert Kenyon, him the said J. C. B. Davis, in the manner and by the means aforesaid, *feloniously,* premeditatedly, deliberately, on purpose and of his malice aforethought at the said County of Howell and State of Missouri, on the said —— day of January, A. D. 1937,

did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

What we have shown as the second paragraph of the information may be a little obscure, though the same allegations appear in an information approved in State v. Conley, 255 Mo. 185, 187, 195, 164 S. W. 193, 196. But the third paragraph in connection with the others sufficiently charges that the appellant at the County of Howell in the State of Missouri, on or about the —— day of January, 1937, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, shot J. C. B. Davis, in and upon the head and body with a loaded pistol, then and there and thereby inflicting a mortal wound upon his said head and body of which wound the said Davis instantly died. This was sufficient, especially in the absence of any attack upon the information at the trial.

■ Appellant's counsel in his brief charges that the information is fatally defective in five respects. The first three of these are that it fails to charge: that the mortal wound was feloniously inflicted; or that the homicidal act was done feloniously; or that the deceased was killed by means of the pistol. On this point State v. Birks, 199 Mo. 263, 271-2, 97 S. W. 578, 580; State v. Woodward, 191 Mo. 617, 625-631, 90 S. W. 90, 92-94; and other cases referred to therein are cited. The Woodward case holds it is not enough to allege the shooting or other assault was perpetrated feloniously; the indictment must further charge the homicidal act, i. e., the infliction of the mortal wound, was felonious. But the decision further holds that where, as here, the averment of a felonious shooting is connected by the words "then and there" with a further averment of the fatal wounding, it is sufficient. And while the Birks case holds that the charge of the shooting must be followed by the words "thereby giving" the deceased a fatal wound, or words of similar import, it was ruled in State v. Ballance, 207 Mo. 607, 615, 106 S. W. 60, 63, that the words "giving to him," the deceased, with the pistol, gunpowder and leaden balls "aforesaid," in and upon a designated part of the body "one mortal wound," were sufficient. [See, also, State v. Robertson, 178 Mo. 496, 507, 77 S. W. 528, 531, and State v. Linn, 223 Mo. 96, 108, 122 S. W. 740.] We hold the information good as against these assignments.

The other two assignments are that the information fails to allege the appellant's connection with the shooting and killing of the deceased; and fails to describe the location and character of the mortal wound, but duplicitously charges the deceased received one mortal wound on the head and body without saying which one caused his death. Taking the second point first, the indictment or information need not describe the wound or state upon what particular part of the body it was inflicted; and it will not be fatally defective if it al-

1180

leges one mortal wound on two parts of the body. [State v. Edmundson, 64 Mo. 398; State v. Ramsey, 82 Mo. 133, 136-7; State v. Bronstine, 147 Mo. 520, 530, 49 S. W. 512, 515.]

The first point, that the information fails to connect the appellant with the killing of the deceased, is mere cavil. True, the information is long, but the second paragraph alleges the appellant had the pistol in his hands and discharged it against the deceased. The third paragraph continues by saying the appellant (it carries over the subject of the verbs "shoot, strike, penetrate and wound," and could mean no one else) with the pistol shot the deceased inflicting a mortal wound which resulted in instant death. The information is a counterpart, allowing for the difference in the facts, of one approved in State v. Conley, supra, 255 Mo. l. c. 187, 195, 164 S. W. l. c. 193, 196, after a consideration of the cases cited by appellant's counsel.

The next assignment is that there was not sufficient proof of the venue. The appellant's confession was that the deceased was killed where his body was found. That was about two miles south of Pomona, and was in Howell County, of which fact we take judicial notice. But the point is further without merit because failure to prove the venue is a matter of exception, State v. Dimmick, 331 Mo. 240, 248, 53 S. W. (2d) 262, 266. Being so, the point is not preserved unless raised in the motion for new trial, and that was not done in this case.

Another assignment is that the record fails to show the verdict was rendered by the twelve jurors empaneled to try the cause; or that they were all in court when the verdict was returned; or that the jury were in charge of the sheriff; or that the sheriff brought them into court to return the verdict. Section 3700, Revised Statutes 1929 (Mo. Stat. Ann., p. 3255), provides that "when the jury have agreed upon a verdict, they must be conducted into court by the officer having them in charge." There is a similar requirement in Section 3683, Revised Statutes 1929 (Mo. Stat. Ann., p. 3236). Counsel cites these sections and relies on State v. Meyers, 68 Mo. 266, which is shown in the footnote to the first mentioned statute as requiring the record to disclose that all jurors were present when the verdict was received by the court. But State v. Turpin, 332 Mo. 1012, 1019, 61 S. W. (2d) 945, 948, points out that in the Meyers case it affirmatively appeared only eleven jurors were present when the verdict was received. The Turpin case holds that where the record shows the jury returned into court a verdict signed by the foreman (as it does show in the instant case) and is merely negative or silent as to how many jurors were present, a presumption of right action on the part of the trial court will be indulged.

The record for the first day of the trial, July 21, 1937, shows the empaneling and swearing of a jury of twelve men to try the cause.

naming them, and recites that at the end of the day they were placed in charge of the sheriff and a named deputy sheriff, sworn for that purpose. The record of the second day's proceedings shows the sheriff and his deputies and the jury present in court; and recites that after the hearing of all the evidence, instructions and argument, the jury retired to deliberate and on the same day returned into open court their verdict. It does not affirmatively appear that the jury were in charge of the sheriff or his deputy at the time.

We find no case holding that if the record shows the jury were placed in charge of sworn officers at the beginning of the trial (as this record does) it will be presumed they remained in custody of such officers throughout the trial, nothing to the contrary appearing. But we think there is such a presumption. It is held that in the absence of a record showing otherwise, it will be presumed that the trial court followed the law in making up the jury list and in impaneling the jury. State v. Perno (Mo. Div. 2), 23 S. W. (2d) 87, 88-9. So, also, it is well settled that the record need not affirmatively show the officers in charge of the jury were sworn. [State v. Stubblefield, 157 Mo. 360, 366, 58 S. W. 337, 339; State v. Page, 212 Mo. 224, 241, 110 S. W. 1057, 1062.] Exceptions must be saved to *irregularities* in swearing the jury, State v. Frazier, 339 Mo. 966, 982, 98 S. W. (2d) 707, 716. The rule is that misconduct or separation of the jury before, or even after they retire to deliberate on their verdict, is a matter of exception, and the question must be preserved in the motion for new trial. [State v. McGee, 336 Mo. 1082, 1090, et seq., 83 S. W. (2d) 98, 102; State v. Trainer, 336 Mo. 620, 626, 80 S. W. (2d) 131, 134; State v. Malone, 333 Mo. 594, 609-10, 62 S. W. (2d) 909, 915; State v. Bowman (Mo. Div. 2), 12 S. W. (2d) 51, 52(5).] Indeed, the second provision of the statute prescribing the grounds for new trial implies as much. [Sec. 3734, Mo. Stat. Ann., p. 3272.] The same is true where trial proceedings are conducted in the absence of the defendant. [State v. Tarwater, 293 Mo. 273, 290, 239 S. W. 480, 485.] In short, all such proceedings are, as the Bowman case says, matters of procedure and exception which must be preserved in the motion for new trial. That was not done in this case, so we conclude the question whether the jury remained in custody of sworn officers throughout the trial is not before us.

Finally, it is assigned that the record fails to show the appellant was present on the second and concluding day of the trial, July 22, when the verdict was returned. This is true; the record is silent on that point. But it does show he was present when the trial began on July 21. Section 3665, Revised Statutes 1929 (Mo. Stat. Ann., p. 3218), provides that "no person indicted for a felony can be tried unless he be personally present during the trial." But there is a proviso in the section that "when the record in the appellate court

shows that the defendant was present at the commencement or any other stage of the trial, it shall be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial." This presumption extends to the returning of the verdict. [State v. Comer, 296 Mo. 1, 11, 247 S. W. 179, 182.] Furthermore, as this Comer case and the Tarwater case, supra, hold the point is not for review because the question was not raised in the motion for new trial.

■ This covers all the assignments of error in appellant's brief except two, which complain of instructions given. One of these assignments also appears in the motion for new trial. It charges error in the giving of the State's main instruction on the ground that the evidence did not make a prima facie case of murder in the first degree under the statute. Section 3982, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., p. 2778). This is nothing more than a demurrer to the evidence, and we have already discussed that question. The other assignment assails the State's Instruction No. 6 which told the jury, in substance, that evidence of any verbal statements made by the appellant should be taken into consideration in connection with the other facts and circumstances, but should be considered with caution, on account of the liability of the witnesses to forget, misunderstand or misconstrue what was really said or intended. It is argued this instruction singles out and comments upon the appellant's admissions. We cannot think the instruction was harmful to the appellant, in view of the concluding cautionary part. But regardless of that, the point was not presented in the motion for new trial.

■ The appellant asked no instructions at the trial, and did not suggest that the court had failed to instruct on all the law of the case. That point was not made in the motion for new trial. Neither was it claimed in the motion that his confession was involuntary. The record shows the appellant was present when his motion for new trial was overruled, that he was granted allocution and was present when judgment and sentence were pronounced. We find no reversible error in the record, and the judgment must be affirmed. But, since the judgment provides for the execution of the death sentence by hanging by the Sheriff of Oregon County, Missouri, pursuant to Sections 3722 and 3723, Revised Statutes 1929 (Mo. Stat. Ann., p. 3268); and inasmuch as these sections have since been repealed by Laws Mo. 1937, pages 222, 223, effective September 6, 1937, requiring the punishment of death to be inflicted by the administration of lethal gas at the State Penitentiary in Jefferson City, Missouri; it is ordered that the cause be remanded to the trial court with directions to have the appellant brought before it and to pronounce sentence in accordance with the statutes last aforesaid, and the holding of this court in State v. Brown, 342 Mo. 53, 112 S. W. (2d) 568, 569. All concur.

## On Motion for Rehearing.

ELLISON, J.— ▇ In his motion for rehearing appellant vigorously assails our opinion on three grounds. The first complains of our overruling his assignment that the venue was not proven. The evidence showed Dr. Davis was killed where his body was found, and that was at a point adjacent to U. S. Highway 63 about two miles south of Pomona. Our opinion took judicial notice of the fact that that point is in Howell County, where the venue was laid in the information. Appellant asserts we committed error in so doing, citing the following cases not referred to in his original brief; State v. King, 111 Mo. 576, 577, 20 S. W. 299; State v. Hartnett, 75 Mo. 251; State v. Burgess, 75 Mo. 541, and State v. Quaite, 20 Mo. App. 405, 408. In the King case the evidence showed only that the crime charged was committed at Cora; in the Hartnett case, near Scotts Station; and in the Burgess case, at Camden Point. In each instance this court held the proof was insufficient to fix the venue in the county alleged in the information. And the Quaite case squarely ruled "proof that the alleged offense was committed in the town of Freeman, in the absence of evidence tending to show that said town was in Cass County, was not proof of the venue as laid in the indictment." On the other hand, in Bell v. Jamison, 102 Mo. 71, 76, 14 S. W. 714, 715, this court took judicial notice of the fact that Camden Point is *not* in Lincoln County; and in State v. Skibiski, 245 Mo. 459, 464, 150 S. W. 1038, 1039, that a point eight miles from Doniphan, the county seat of Ripley County, is within the county. However it has been held courts do not have judicial knowledge of the location of unincorporated villages (State v. Bush, 136 Mo. App. 608, 616, 118 S. W. 670, 672), and appellant says in his motion for rehearing that Pomona is unincorporated. Nevertheless, it is listed in the Blue Book, or Official Manual of the State of Missouri, as having a post office. The last Federal census gives it a population of 200, and the official records of the State Highway Department show it to be located on U. S. Highway 63, and also on the St. Louis-San Francisco Railroad, about ten miles east of the west boundary, thirteen miles south of the north boundary, fourteen miles west of the east boundary, and twenty-five miles north of the south boundary, all of Howell County. We have held at least twice that we will take judicial notice of the location of the roads in our State Highway system, and of distances therealong. [State v. Enochs, 339 Mo. 953, 956, 98 S. W. (2d) 685, 686; State v. Ashcraft, 342 Mo. 608, 615, 116 S. W. (2d) 128, 131.] And this is in line with the general doctrine authorizing a court to know judicially facts which are a part of the general knowledge of the country, and which are duly authenticated in public repositories open to all. [State ex rel. O'Dell Const. Co. v. Hostetter, 340 Mo. 1155, 1161, 104 S. W. (2d) 671, 673.]

There is no dispute as to the spot where the murder was committed. The assignment made is that there is no evidence showing in what county that point is located. The rule in this State is that the proof of venue "is sufficient if it can be reasonably inferred from the facts and circumstances in evidence." [State v. Gow, 235 Mo. 307, 325, 138 S. W. 648, 653.] We have no hesitation in holding that in view of the evidence and the foregoing geographical facts we may say judicially Pomona (whether incorporated or not) is in Howell County and that a point on U. S. Highway 63 two miles south of there also is in that county. If it be urged that the rule should be stricter in criminal cases, especially capital cases, we can only say that where the substantial rights of the defendant are not violated, the court should not shut its eyes in a criminal case to facts it would judicially recognize in any other case. Indeed the protection of life, person and property against criminal aggression make it quite as important from the standpoint of public interest that cases be tried by common sense methods. Neither is there any merit in appellant's contention that by so ruling we are substituting our judicial knowledge for a finding of fact by the jury. The instructions required the jury to find the appellant killed Dr. Davis in Howell County. They did so find. We are merely holding the evidence sustains that verdict.

While we have considered and discussed in the preceding paragraphs appellant's first assignment, yet the fact is that it has passed out of the case because he failed to preserve in his motion for new trial the point that the venue was not proven. We so held in our original opinion, but appellant assails that ruling as erroneous, citing fourteen cases, including: State v. Keeland, 90 Mo. 337, 2 S. W. 442; State v. Myer, 64 Mo. 190; and State v. Quaite, supra, 20 Mo. App. 405. All these cases concede we must consult the bill of exceptions to ascertain whether there was evidence proving the venue. All of them hold that where it appears there was no such evidence the conviction must be reversed; and they say so without annexing any condition that the point must be saved in the motion for new trial. They simply do not discuss the question at all. The case that comes nearest to it is the Quaite case. There, the State's brief made the point that the motion for new trial failed to raise any question on proof of the venue, but the Kansas City Court of Appeals reversed and remanded the cause on that sole ground without any reference to the lack of such an assignment in the motion for new trial, which may be thought to indicate a view that it was unnecessary.

In our original opinion we held failure to prove the venue is a matter of exception, citing State v. Dimmick, 331 Mo. 240, 248, 53 S. W. (2d) 262, 266; and being so, that the point is not preserved unless raised in the motion for new trial. Counsel for appellant take issue with us, saying the holding is unprecedented and in conflict

with all the decisions referred to in the second preceding paragraph. We think it fundamental that matters of exception are open to review on appeal only when they have been called to the trial court's attention by a motion for new trial. [Syz v. Milk Wagon Drivers' Union, 323 Mo. 130, 134, 18 S. W. (2d) 441, 443; State v. Wolzenski, 340 Mo. 1181, 1187, 105 S. W. (2d) 905, 908.]

It may be that fifty years ago and more when the cases cited by appellant were decided, it was considered the question of unproven venue could be raised by *general* assignments denying the sufficiency of the evidence, or complaining of the refusal of a peremptory instruction, etc. But that is not the law now, especially in view of our new trial statute, Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275), which requires assignments in the motion to be set out in detail and with particularity. While we still recognize such general assignments insofar as they go to the main issue and challenge the sufficiency of the proof of defendant's guilt; yet that is not true of a mere contention that the venue was not proven, which is in the nature of a plea of confession and avoidance, procedurally admitting guilt but claiming the evidence did not show in what jurisdiction the crime was committed. That the venue is not considered an essential part of the crime is shown by Section 3563, Revised Statutes 1929 (Mo. Stat. Ann., p. 3160), which provides that no indictment or information shall be deemed invalid, nor shall the judgment be affected, for want of a proper venue, or any venue at all. In thus declaring the law we work no hardship on appellant, for as we have already held, the venue was sufficiently proven in this case.

The third assignment asserts our opinion erred in overruling appellant's contention that the record fails to show he was present on the second day of the trial. The record does show he was present on the first day of the trial and we held under the concluding proviso of Section 3665, Revised Statutes 1929 (Mo. Stat. Ann., p. 3218), that it would be presumed he was present throughout the trial; also that the point is a matter of exception, and was not for review because the question was not raised in the motion for new trial. The statute provides "no person indicted for a felony can be tried unless he be personally present during the trial; . . . *provided further*, that when the record in the appellate court shows that the defendant was present at the commencement or any other stage of the trial, it shall be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial." The record in the instant case for the second day of the trial recites: "Now at this day comes again the said parties, Plaintiff and Defendant, *by their respective attorneys*," etc. (Italics appellant's.) Appellant now says in his motion for rehearing that the record recital just quoted is equivalent to a direct statement that he was *not* present on the sec-

ond day of the trial, but appeared by attorney; and that this brings the facts within the proviso of the statute, above set out—in other words, *all* the evidence in the record shows he was absent.

On this point appellant cites State v. Schoenwald, 31 Mo. 147, 159-160. In that case the entry was: "Now again come as well the parties as aforesaid as also the jurors aforesaid." The decision stressed the fact that the entry used the word "parties aforesaid," and since the defendant had been in court the day before, the ruling was that the entry sufficiently showed defendant's presence. But the opinion added: "if it had been entered that he appeared by attorney, or if it appeared from the record, by its silence on the subject, that he was not present, no doubt the judgment would be erroneous." That case was decided in 1860 before the two provisos had been added to the statute. It was then construed to require an affirmative record showing of the defendant's presence. To abolish this harsh and technical requirement the two provisos were added in the Revision of 1879, State v. Hope, 100 Mo. 347, 356-8, 13 S. W. 490, 492, 8 L. R. A. 608.

As the statute reads now it says if the record shows the defendant was present at the commencement or any other stage of the trial, it will be presumed he was present throughout, in the absence of *all* evidence in the record to the contrary; it does not say in the absence of *any* evidence to the contrary. We think this means all the evidence in the whole record must point to the contrary to overcome the statutory presumption. And why should this not be so. It is a perversion of justice to reverse a case on the technical ground that the record *fails to show* the defendant's presence in court when in fact he was present, or the point was not raised below. The entry in this case for the second day of the trial recited "come again the said parties, Plaintiff and Defendant, by their respective attorneys." The appellant could have been present in person and also by attorney. The fact that he appeared by attorney does not necessarily signify he was not in court, himself. There is nothing else in the record tending to indicate he was not present. He was there the first day of the trial. The second day the State concluded its case, the defense presented its case, the cause was argued and submitted, and the jury returned its verdict. It is incredible that his counsel would have thus proceeded with the trial, or that the trial court would have permitted him to do so, in the appellant's absence.

In view of what is said above, we think the legislative intent exhibited by the statute, Section 3665, was to save criminal cases from reversal because of mere silence or vagueness in record recitals concerning the defendant's presence at the trial, and to require a showing in the *whole* record, including the bill of exceptions that he was absent. This being so, the point must be preserved in the motion for

new trial. In so holding in our original opinion we followed State v. Comer, 296 Mo. 1, 11, 247 S. W. 179, 182, and we think that ruling was correct.

Accordingly, the motion for rehearing is overruled. All concur.