THE STATE v. FERDINAND BROCKINGTON, Appellant.—162 S. W. (2d) 860.

Division Two, June 17, 1942.

BOHLING, C.— This proceeding is pending on the State's motion to modify. On March 25, 1931, the judgment of the trial court imposing a sentence of death on Ferdinand Brockington for a murder committed May 12, 1929, was affirmed, with the date of execution fixed at May 8, 1931. [State v. Brockington (Mo.), 36 S. W. (2d) 911.] The death sentence, then inflicted by hanging (Sec. 3722, R. S. 1929), was not executed for reasons hereinafter stated. [Consult also Secs. 3719, 3723-3725, R. S. 1929.] In 1937 the General Assembly changed the manner of inflicting the death sentence to the administration of lethal gas (Sec. 4112, R. S. 1939), and enacted certain new sections in lieu of other repealed sections of the then existing law (Secs. 4108, 4109, 4111-4115, R. S. 1939). We have held that execution of the death sentence after the effective date of the Act of 1937 should be by the administration of lethal gas in accord with said Act notwithstanding the conviction was had while the law providing for execution by hanging was in effect. State v. Brown, 342 Mo. 53, 57[3], 112 S. W. (2d) 568, 571[4, 5]; State v. Wright, 342 Mo. 58, 63, 112 S. W. (2d) 571, 575[12]; State v. Boyer, 342 Mo. 64, 75[14], 112 S. W. (2d) 575, 582[16]; State v. Kenyon, 343 Mo. 1168, 1182[10], 126 S. W. (2d) 245, 253[18]. A purpose of the motion is to modify the judgment entered in 1931 so as to authorize execution by the administration of lethal gas under the authorities cited. Sections 4110 and 4111, R. S. 1939, provide for the carrying into effect of a sentence of death in the event the convict shall not have been executed pursuant to the original sentence. [State v. Shehane, 25 Mo. 565.]

Pending the appeal in State v. Brockington the Governor of Missouri advised the Sheriff of Jackson County of the receipt of information casting doubt on the then sanity of Brockington. We mention some of the statutory provisions bearing on the subject. "For good cause shown, . . . the governor may . . . suspend the execution of any convict sentenced to the punishment of death

. . ." [Sec. 3800, R. S. 1929.] "If any person, after having been convicted of any crime or misdemeanor, become insane before the execution . . . of the sentence of the court, it shall be the duty of the governor to inquire into the facts, and he may . . . suspend, for the time being, the execution of such sentence, and may, by his warrant to the sheriff of the proper county, . . . order such lunatic to be conveyed to the insane asylum, and there kept until restored to reason. If the sentence of such lunatic is suspended by the governor, it shall be executed upon him after such period of suspension has expired . . ." [Sec. 3801, R. S. 1929.] "If, after any convict be sentenced to the punishment of death, the sheriff shall have cause to believe that such convict has become insane, he may summon a jury of twelve competent jurors to inquire into such insanity . . ." [Sec. 3802, R. S. 1929.] The prosecuting attorney was required to attend such inquiry and provision was made for subpoenaing witnesses and their attendance. [Sec. 3803, R. S. 1929.] "If it be found that such convict is insane, the sheriff shall suspend the execution of the sentence until he receives a warrant from the governor or from the supreme or other court, as hereinafter authorized, directing the execution of such convict." [Sec. 3804, R. S. 1929.] "The sheriff shall immediately transmit such inquisition to the governor, who may, as soon as he shall be convinced of the sanity of the convict, issue a warrant appointing the time and place of execution, pursuant to his sentence . . ." [Sec. 3805, R. S. 1929.] The changes effected by Laws 1939, pp. 353 (Sec. 3801) and 354 (Secs. 3802-3805), in the applicable statutory provisions are not material to a determination of the issues for discussion. [See Secs. 4190-4195, R. S. 1939.]

The State's motion also informs us as follows: The Jackson county sheriff instituted proceedings which resulted in finding said Brockington insane. Acting upon said finding, the Governor of Missouri, on April 29, 1931, suspended the execution of the death sentence against said Brockington for the reason he had been declared insane and committed him to the State Hospital for the Insane, No. 2, at St. Joseph, Missouri. This commitment was for detention, safe keeping and treatment until said Brockington be restored to reason, at which time the Superintendent of said Hospital was directed to give due notice thereof to the Governor, who was then to order the execution of the sentence of the court. Brockington was delivered to said Hospital on April 30, 1931. He escaped therefrom on August 1, 1933. Apprehended in Pontiac, Michigan, on September 22, 1941, he was returned to this State and this proceeding followed. The State's motion mentions an entry on said Hospital's records of August 21, 1934, that said Brockington "was discharged from the Institution by authority of the President of the Board of Managers of the State Eleemosynary Institutions."

██ We are unable to agree with the position, as we understand it, taken by the State that the entry on the records of State Hospital No. 2, made under the authority of the President of the Board of Managers of the State Eleemosynary Institutions a year after Brockington had escaped therefrom and while he was still at liberty, has the force and effect of an adjudication of the restoration to reason of said Brockington and that the only step essential to the execution of his sentence to death is its modification so as to permit of the administration of lethal gas. The State here relies upon observations made in Re Moynihan, 332 Mo. 1022, 1039 [11], 62 S. W. (2d) 410, 419 [11, 12]. The court was there discussing a preliminary order of the probate court under Secs. 498 and 499, R. S. 1929 (Secs. 497 and 498, R. S. 1939), for the temporary restraint of one so deranged as to endanger his own person or the person or property of others, and observed that such orders were not necessarily binding upon Superintendents of State Hospitals until rescinded but that the Superintendent of the State Hospital involved might lawfully discharge such a patient when his reason was fully restored on his own motion at any time (Sec. 8629, R. S. 1929). The facts clearly differentiate the cases. Re Moynihan has reference to the portion of Sec. 8629 reading: "any patient may be discharged by the superintendent whenever, in his opinion, the reason of such person is fully restored." The State's motion refers to a discharge by the President of the Board of Managers of the State Eleemosynary Institutions (See Sec. 9259, R. S. 1939), and not ██ to a discharge by the Superintendent of State Hospital No. 2. Brockington at the time of the entry was an escape from said Institution.

Brockington's commitment to State Hospital No. 2 was not had under proceedings by which individuals are ordinarily committed to such institutions. Section 8629, R. S. 1929 (Sec. 9321, R. S. 1939, as modified by Laws 1937, p. 513), in so far as it may authorize the discharge of an insane convict must be read in connection with applicable statutory provisions (quoted supra) relating to the commitment to State Hospitals of convicts becoming insane pending the execution of the sentence assessed against them (consult Secs. 4190-4195, R. S. 1939, as modified by Laws 1939, pp. 353, 354). It would do violence to the spirit and letter of said statutory provisions to hold that the officers of such Institutions, vested with authority to discharge persons committed thereto because of insanity, may blandly discharge therefrom convicts whose sentences stand unexecuted by reason of their insanity without affording due opportunity to other law enforcement officers of the State to carry into execution the judgments of our courts having criminal jurisdiction, thus tending to hinder the administration of the criminal laws in such instances. The statutes contemplate as did the warrant of the Governor committing Brockington to State Hospital No. 2 that those responsible

for the receipt and restraint of Brockington at said Institution would give due notice of his restoration to reason to the Governor and otherwise comply with the laws and orders of the duly constituted State officials and tribunals to the end that the judgment and sentence of the court, temporarily suspended during Brockington's insanity, be carried into execution in accord with due process of law. This, from recitals in the State's motion, appears to have been not effected. It follows that Brockington has never been discharged from State Hospital No. 2 within the meaning of our statutory provisions relating to the confinement and treatment of convicts becoming insane pending the execution of a judgment assessing their punishment. Until the statutory provisions relating thereto are complied with, other matters need not be discussed.

The motion to modify is overruled. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.