STATE of Missouri, Respondent,

v.

Kenneth HAUN, Appellant.

No. 47040.

Supreme Court of Missouri,

Division No. 1.

June 8, 1959.

James J. Wheeler, Keytesville, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Assist. Atty. Gen., for respondent.

COIL, Commissioner.

Kenneth Haun was convicted of the rape of a female child under the age of 16 and sentenced to two years in the penitentiary. RSMo 1949 § 559.260, V.A.M.S. He here contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, in permit-

ting the state to reopen its case, in the admission of evidence, and in the giving of an instruction.

Defendant's two points to support his contention that the state failed to make a submissible case are (1) that there was insufficient evidence to establish the corpus delicti and that, therefore, defendant's written confession was inadmissible and that without it the evidence was insufficient to support a conviction; and (2) that the state failed to prove venue.

Defendant, who had been married to and later divorced from the sister of prosecutrix, met her family, consisting of the mother, father, two sons, and two daughters including the 10-year-old prosecutrix, in Marceline on Saturday evening, October 5, 1957. By arrangement with the mother, defendant drove some of her family to their farm home. After reaching the home, defendant gave each of prosecutrix's brothers and her sister a driving lesson, permitting each to drive his car about the neighborhood. Defendant had been drinking beer or other intoxicants all of that day and continued to imbibe during the time of the events herein described. When, about 8:30, it became the "turn" of prosecutrix to have a lesson, defendant left the family home with prosecutrix on his lap. They returned about 10:15. The mother thought her daughter "acted kinda funny." Prosecutrix refused to answer questions other than to say that defendant had not hurt her. She jumped into bed and covered her head and answered that nothing was the matter. The next morning the mother again attempted to question her and attempted to look at her clothing, but again prosecutrix refused to answer questions and refused to permit her clothing to be examined. On Monday morning the 15-year-old sister observed that the panties prosecutrix was wearing had "blood all over them." The mother took prosecutrix to town where she was examined by two doctors.

One of the doctors testified that prosecutrix had been "injured along the lower part of the vagina" and was then bleeding; that there was one small tear "at the outside," and that the lower portion of the hymen was torn; that the injuries described could have been "done with anything that would di*a*late the lower portion of—Q. What type of a thing? A. Anything in the shape of a penis. Q. Would an ice pick cause such an injury? A. It would have to be blunt."

Prosecutrix did not testify, although a preliminary examination was conducted and the court overruled an objection to her competency as a witness. Nevertheless, it was apparent that she was not too bright.

Defendant testified to the events as heretofore related up to the time he left with prosecutrix on his lap. His testimony from that point was that he took prosecutrix for a short ride and returned her to the family home without having molested her in any way. He admitted that he had made and signed a written statement on October 29, 1957, in which he had said, inter alia, that after he left with prosecutrix on his lap he drove down a dirt road, stopped, and had sexual intercourse with her; that he then returned her to the home after admonishing her not to tell her parents. Defendant explained at the trial that he had signed the confession because he had been in jail for 35 days, didn't "figure I would get out" and he was "scared"; that the sheriff and his deputy said they would help him if he told the truth or if he would sign the statement.

■■ "It is established law in Missouri that when the corpus delicti has not been sufficiently proven, an uncorroborated extrajudicial confession of guilt cannot be regarded as evidence tending to show guilt. * * * Yet this rule does not require full proof of the body of the offense, independent of the confession. If there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circum-

stances and the confession may be considered in determining whether or not the corpus delicti has been established." City of St. Louis v. Watters, Mo.App., 289 S.W.2d 444, 446[2–4]. State v. McCord, 237 Mo. 242, 246, 140 S.W. 885, 886[3–5]; State v. McQuinn, Mo., 235 S.W.2d 396[1–3], 397 [4, 5]; State v. Kollenborn, Mo., 304 S.W. 2d 855, 858[3–6]. In the instant case there was evidence of corroborating facts and circumstances independent of the confession which tended to prove the offense by confirming some of defendant's statements contained in the confession, e.g., the fact that prosecutrix was alone in defendant's car and seated on his lap as they drove away from the family home; that upon her return prosecutrix acted in a manner which caused her mother to be suspicious that something was wrong; that later examination showed blood on her undergarment and medical examination disclosed an injury to the vagina which was still bleeding and that the hymen had been ruptured. It was for the jury to say whether those facts, considered together with the confession, and taking into account defendant's denial at the trial and his stated reasons for having made and signed the confession, convinced them beyond a reasonable doubt of defendant's guilt. State v. Cantrell, 320 Mo. 248, 6 S. W.2d 839, 841[3–4].

■ No one testified in so many words that the alleged rape occurred in Chariton County. That venue was in Chariton County was sufficiently proved, however, if the jury reasonably could have found from facts and circumstances in evidence that the alleged crime occurred in that county. State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245, 254[20–23].

■ The evidence showed that the home of prosecutrix was in Chariton County, located three miles south of the south edge of Marceline and one and one-half miles west of that point and that the north line of Chariton County was at the south edge of Marceline. We take judicial notice of the fact that a location three miles

south of the north line of Chariton County and one and one-half miles west of that point is at least three miles from any other county. Defendant's testimony as to where he drove his automobile after he left with prosecutrix on his lap is not entirely clear. He said, as best we may understand, that he drove a mile west on the east-west road in front of prosecutrix's home, turned around and went east, apparently about one-fourth mile past the house, then turned north for not more than one-half mile and then "back south around" to the same east-west road. While, as we have said, the evidence was not too clear as to defendant's route, we think all the evidence was sufficient to support a reasonable finding by the jury that defendant's car was at all times mentioned within the confines of Chariton County and that, consequently, venue was sufficiently proved.

■■ The court permitted the state to reopen its case immediately after it had rested and to recall Chariton County's deputy sheriff who then testified as to the location of prosecutrix's home and as to the location of the north line of Chariton County. Whether and under what circumstances it is proper to permit the state to reopen its case is within the discretion of the trial court. The trial court's action presently complained of indicates no abuse of that discretion and none has been demonstrated. State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523, 527[16–19]; State v. Dobbins, 351 Mo. 796, 174 S.W.2d 171, 172[5–6].

■ Defendant next contends that the trial court erred in permitting the mother of prosecutrix to testify that she "made complaint to Police Officers on the Monday following" the averred crime, and in admitting "evidence of conversations" with such officers. Inasmuch as the record shows that the substance of any conversations the mother may have had with any police officer was not admitted in evidence, defendant's point must consist solely of the contention that it was error to permit the mother to testify that she talked with the police

after her daughter had been examined by the doctors and that a police officer took them home. The mother testified that after leaving the doctor's office, she and prosecutrix went to the city hall and that a Mr. Finney called several other policemen. That answer was permitted to stand over the objection that it was not the best evidence. Then, without objection, the mother testified that one of the other officers was a Mr. Parker and that these officers talked with her daughter. After the last noted answer was given defendant objected that such was "improper testimony." The mother then testified without objection that one of the officers took them home. Defendant's objection which followed was to the effect that it was wholly immaterial and that it was "intended to indicate the officers all gathered around her."

Defendant's present argument is that the mother's testimony that she complained to police officers and that they spent time with her daughter would lead the jury to believe that the daughter had been raped and that her mother knew it. Aside from the fact that the record does not indicate timely, proper objections to any of the testimony now complained of and, in addition to the fact that we are unable to agree with defendant's conclusion as to the effect of the testimony heretofore noted, we are of the opinion, in any event, that no prejudice to defendant could have possibly resulted from the mother's testimony to the effect that police officers talked with her daughter and that one of them took her and her daughter home.

■ Defendant next contends that the trial court erred in permitting one of the doctors to testify that he examined prosecutrix and as to his findings. Defendant's assigned reason is that "there was no evidence whatever the conditions described resulted from any activity of defendant." Defendant's contention in that respect has been decided adversely to him by our holding heretofore on the sufficiency of the evidence, including the doctor's testimony, to establish the corpus delicti.

■ Defendant's final contention is that the court erred in giving instruction 3. The only reason assigned, which has not been answered by what we have said heretofore, is that the instruction improperly commented on the matters of consent and outcry when there had been no issue made or evidence adduced concerning them. The first paragraph of instruction 3 was: "The Court instructs the jury that under the law of this state it is made a felony for a man to have carnal knowledge of a female child under the age of 16 years, regardless as to whether or not such female child gave her consent to such act, and regardless of whether or not such female child made any outcry, for the law of this state renders a child under the age of 16 years incapable of giving her consent to an act of carnal knowledge of her person." The second paragraph hypothesized the facts which, if found, constituted the offense charged, and directed that if the jury so found it would find the defendant guilty of rape as charged.

It has been held proper to include in the state's instruction defining the crime of carnally knowing a female child under the age of 16, the statement that, if prosecutrix was under the age of 16, whether or not she consented is immaterial. State v. Worden, 331 Mo. 566, 56 S.W.2d 595, 598 [7]; State v. Nevitt, Mo., 270 S.W. 337, 339 [3]. Instant instruction 3, however, contained the additional phrase, "and regardless of whether or not such female child made any outcry." In State v. Davis, Mo., 190 S.W. 297, 298[3, 4], it was said:

"Instruction No. 1 which purports to define the offense with which defendant is charged, declares that in a case of this type it is no defense that the female made no outcry at the time, or complaint thereafter. Literally, this is true, but in our opinion, when the facts are as this case discloses, such instruction should not be given unless the court goes further and directs the jury

the purpose for which evidence of failure to complain or outcry is material. While it was unnecessary in order to sustain this charge to show that the assault was accomplished with force, nevertheless the prosecuting witness, upon whose testimony the state almost wholly relies, testified that the act was accomplished with force and violence. The record further shows that the defendant's grandmother was in an adjoining room at the time of the alleged assault, and there is evidence that with a female of the size and age of the prosecutrix, such an assault as she describes, would be accompanied by pain and suffering to her. Under these circumstances, the fact that the prosecutrix made no outcry or complaint and did nothing else tending to attract the attention of those in immediate proximity was important in determining the reasonableness of the girl's statement and her credibility as a witness.

"The instant instruction, without qualifying declarations, is calculated to minimize, if not destroy, the effect of such evidence. We have heretofore pointed out the vice of specially calling the attention of the jury to isolated facts, or otherwise giving prominence to the facts of the case favorable to one side, while measurably retiring the view of the other side by ignoring it or presenting it only in general terms."

In the instant case, unlike the situation in the Davis case, there were no facts adduced giving rise to any issue concerning outcry. We are of the opinion that under the circumstances of the instant case, i.e., where there was no evidence that an outcry was or was not made, there was no evidence which the instruction's reference to the immateriality of an outcry could minimize or destroy and that, consequently, the instruction's reference to outcry, though improper, was not prejudicial to defendant. State v. Amsden, Mo., 299 S.W.2d 498, 503 [9], on which defendant relies, is not in point. There the court held it was reversible error for the state to hypothesize that prosecutrix submitted to sexual intercourse because of threats of personal violence and

through fear of great violence or death, even though she did not offer the utmost resistance to defendant at the time, when there not only was no evidence to support such a theory but the only evidence was to the contrary.

We have examined those matters which need not be preserved or presented for review and find no error therein prejudicial to defendant.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.