**STATE of Missouri, Respondent,**

v.

**Billy Joe GARRETT, Lonnie Garrett, and Sam Irby, Appellants.**

**No. 52111.**

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Motion for Rehearing or to Transfer to Court en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, J. L. Anding, Special Asst. Atty. Gen., Pacific, for respondent.

Linus E. Young, Portageville, for appellants.

EAGER, Judge.

These defendants were charged jointly by amended information with first degree robbery by means of a dangerous and deadly weapon, alleged to have been committed in the County of New Madrid on October 27, 1965. Each was also charged with one or more convictions of prior felonies and with imprisonment therefor, Billy Joe Garrett with three, Sam Irby with four, and Lonnie Garrett with one. They were tried jointly and the jury, in separate verdicts, found all three guilty of "Robbery

1st Degree." Billy Joe Garrett was sentenced by the court to a term of fifty years, Sam Irby to a term of forty years, and Lonnie Garrett to a term of thirty years, after separate motions for new trial had been filed and overruled. The defendants were represented by appointed counsel at the trial and they are represented here also by appointed, but different, counsel. In view of the fact that appellants' brief raises only the question that venue was not sufficiently shown, our review of the evidence will be rather brief. Criminal Rule 28.02, V.A.M.R. The case was tried at New Madrid.

At about 6:00 p. m. on October 27, 1965, Isaac J. Barker, Larry Richards and R. L. Richards were returning to the home of R. L. Richards, after threshing beans; they were traveling south on State Highway 80 which will be referred to later. The two Richards brothers were in a pickup truck a short distance ahead of Barker, who was driving a two-ton truck loaded with beans. The pickup turned into the driveway of the R. L. Richards home (obviously to the left, or east) and Barker had slowed down, activated his turn light and "started to turn," when an old model Buick containing three men "sideswiped" the left front side of his truck, knocked down the mailbox, ran across the road and across a ditch into a field, but eventually got back on the road and proceeded on south. The Richards brothers came back to see if Barker was hurt, Mrs. Richards came out of the front door and her husband told her to call the Highway Patrol; he jumped into his station wagon, backed it out, and followed the Buick. Barker and Larry Richards got the truck off the road, and could then see car lights to the south; they got into the pickup and went there; they found the old Buick and the Richards station wagon, and pulled in front of both cars. Irby and Lonnie Garrett were in the Buick, and Billy Joe Garrett was driving the station wagon or sitting in the driver's seat. As Barker and Larry started to get out, Billy Joe opened the door of the station

wagon and got out with a pistol which he pointed at them; he threatened to kill them because they had seen "the wreck," ordered them into the back seat of the station wagon, and pushed Barker as he got in. Irby then drove the station wagon, Billy Joe the pickup and Lonnie the Buick; they all proceeded south on Highway 80 for "approximately a half quarter of a mile" to a gravel road, on which they turned off, but they stopped "just as we turned onto the gravel road." Barker testified that the gravel road ran "west," but we take judicial notice of the official highway map (as indicated later) which shows that the *only* gravel road leaving Highway 80 in that vicinity runs *east,* and we also note the undisputed testimony that they later *drove* east on that road.

At this point Billy Joe came over to the station wagon which Irby had been driving, and got in the front seat, sitting "sideways" beside Irby and holding his pistol pointed at Barker and Larry Richards in the rear; Lonnie Garrett stood at the side of the car. "They" asked "our names," asked who was driving the truck and "told us if we identified them" they would kill us; Sam Irby told Larry to give him his money which he did, one $5 bill and one $1 bill; at this time Billy Joe was displaying the pistol, as before; Lonnie said, "Yes, get the money." Barker showed his billfold and had nothing but change which no one seemed to want. Thereupon, the three engaged in some conversation about where they should go, but eventually all three vehicles drove *east,* for perhaps two or two and one-half miles, past the "Yellow Dog School." As of that time it was said also that Irby had a shotgun or part of a shotgun, the witness being unable to describe it accurately. There was then some shifting of drivers, and a lot of miscellaneous conversation; Larry was instructed to drive the station wagon, and they all turned south on a gravel or dirt road. At just about that time a Highway Patrol car appeared and, after the cars made the turn, it passed the station wagon and intercepted the procession. The officer had obviously been called about the accident; he arrested Lonnie, and Irby succeeded in running away on foot after driving some distance farther south. Billy Joe instructed Larry, with suitable threats, to back up and proceed westerly, which he did. The route and details are inconsequential; Billy Joe still kept the pistol prominently displayed; he finally let Larry and Barker out some miles to the southwest at a point west of Highway 61, and drove off in the station wagon, after holding "the gun on us" until he took over the driver's seat. Irby was apprehended in East Prairie; Billy Joe in Ste. Genevieve.

■ As already indicated, the sole question briefed here is whether the venue was sufficiently established. We thus look to the pertinent authorities and the rules which they establish. As counsel for defendants states, venue must "be proved because the accused, under the Sixth Amendment to the Constitution, is guaranteed the right to a public trial by an impartial jury of the state and district wherein the crime shall have been committed." Dean v. United States (CA 8), 246 F.2d 335, 338. See also Art. 1, § 18(a), Mo.Constitution, V.A.M.S., providing for a trial by an impartial jury of the county; and § 541.030, RSMo 1959, V.A.M.S. to the same effect. But as indicated in Dean, supra, and in various other cases, venue is not an integral part of a criminal offense and need not be proven beyond a reasonable doubt or by direct evidence, but it may be inferred from all the evidence. In the following Missouri cases it was held directly that the venue might properly be found by the jury from circumstantial evidence. State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245; State v. Gow, 235 Mo. 307, 138 S.W. 648; State v. Ruckman, Mo., 222 S.W.2d 74; State v. Hartwell, Mo., 293 S.W.2d 313; State v. Cobb, 359 Mo. 373, 221 S.W.2d 745; State v. Haun, Mo., 324 S.W.2d 679; State v. Heissler, Mo., 324 S.W.2d 714. As stated in Haun, supra, the venue was suf-

ficiently proved "if the jury reasonably could have found from facts and circumstances in evidence that the alleged crime occurred in that county"; and, as stated in Heissler, supra, in a slightly different form, the evidence is sufficient if the facts and circumstances "reasonably support the inference that the offense was committed in Greene County." Moreover, our courts have held in several cases that on a question of venue they will take judicial notice of county lines, the locations of towns, of official highway maps and of the distances shown thereon. Heissler, supra; Haun, supra; State v. Ruckman, Mo., 222 S.W.2d 74; State v. Ashcraft, 342 Mo. 608, 116 S.W.2d 128; State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245; State v. Enochs, 339 Mo. 953, 98 S.W.2d 685.

■ The State contends that the question of venue was waived because defendants did not raise it at the trial, citing State v. Page, Mo.App., 186 S.W.2d 503, State v. Kenyon, supra, and Davis v. People, 83 Colo. 295, 264 P. 658. We shall not reach that question, for we hold that there was sufficient evidence from which the jury could make a finding of venue. The two Missouri cases cited do indicate that such an assignment of error must at least be raised in the motion for new trial. We need not elaborate further at this time.

We have referred to the official highway map of New Madrid County, of which we may take judicial notice. Missouri Highway 80, a bituminous road, crosses the eastern boundary of New Madrid County in its northern portion, proceeds due west for about two miles, then turns directly south, continuing in that direction for a little more than a mile and a half; at this point a gravel road runs off to the *east*, while the main road (80) turns directly west again and runs for approximately ten miles or more to the west line of the county. The junction with the gravel road just mentioned is at least two and one-half miles from the nearest edge of New Madrid

County. The jury here was reasonably entitled to infer and find from this evidence the following: that the automobile collision described and the take-over by the defendants of the Richards station wagon and truck occurred on the north-south portion of Highway 80 as described; that the robbery occurred substantially at the junction of that highway and the gravel road already described, but just off of the highway; and that such location was more than two miles *inside* New Madrid County. The subsequent meanderings of the parties are of no particular consequence here, for this is not a kidnapping charge, and the robbery had been completed. Instruction No. 2 required the jury to find that the offense was committed "in the County of New Madrid." Thus, as stated in State v. Kenyon, supra, at 126 S.W.2d loc. cit. 254: "The instructions required the jury to find the appellant killed Dr. Davis in Howell County. They did so find. We are merely holding the evidence sustains that verdict." The point raised on insufficient proof of venue is denied.

There is another feature of this case which has given us difficulty, although not briefed or specifically raised in any motion for new trial. We consider it under Criminal Rule 28.02 as a part of the record which we examine without assignment or specification. State v. Crow, Mo., 388 S.W.2d 817. It concerns the findings and sentences made and imposed by the Court under our Second Offender Act, § 556.280, RSMo 1959, V.A.M.S. That section provides, in so far as it concerns our present question, that: "Evidence of the prior conviction, sentence and subsequent imprisonment or fine, parole, or probation shall be heard and determined by the trial judge, out of the hearing of the jury prior to the submission of the case to the jury, and the court shall enter its findings thereon. If the finding is against the prior conviction, sentence and subsequent imprisonment or fine, parole or probation, then the jury shall determine guilt and punishment as in other cases."

The State offered and the Court received various documents to show prior convictions of the defendants, both within and without the State of Missouri; these included records of the Missouri Department of Corrections, prison records from other states, and certified copies of court records of convictions from Missouri and elsewhere. The exhibits were objected to as not properly authenticated, as not "complete" exhibits and because the identities of the respective defendants with the records were not established. The objections were overruled and they have not been properly preserved upon this appeal; nor are any of the exhibits contained in the transcript. Irvin Smith, a Deputy Sheriff of New Madrid County, testified that he knew all three defendants and that he had taken each of them to the Missouri Penitentiary; further, that he got Billy Joe Garrett from the State of Louisiana; he also gave the approximate date of his stated transportation of each defendant; these dates ran from September, 1954, to June of 1959. The only record of any finding by the trial court under § 556.280 was the following, as to each defendant: "The Court, being sufficiently advised in the premises, finds that the defendant has sustained a prior conviction, and orders the defendant tried as a habitual criminal." We conclude that this was not a sufficient compliance with the statutory requirement which is, as we construe it, that in order to make the act applicable the Court must find that the defendant had been convicted of and sentenced for one or more offenses punishable by imprisonment in the penitentiary *and* that he had subsequently been imprisoned, fined, paroled or placed on probation therefor (in the alternative, to accord with the evidence). See, State v. Crow, Mo., 388 S.W.2d 817, and State v. Hill, Mo., 371 S.W.2d 278. The present findings do not follow the statute, and we cannot rewrite it. Nor is it our function to make the findings here. The judgment and sentence as to each defendant must be reversed and set aside. The cause will be remanded in order that the trial court may bring before it each defendant, with counsel, at an appropriate time, for further consideration of the evidence already submitted on this issue, and of any such additional evidence as may be submitted, and thereupon to make appropriate findings as indicated in this opinion. If the trial court then finds (as to any defendant) one or more prior convictions, sentences, and imprisonment or parole therefor in accordance with § 556.280, it may proceed to grant allocution and to render judgment and sentence; if not, then as to that defendant or defendants a new trial must be ordered, for the jury would then be entitled to assess the punishment. Such procedure is discussed at length in State v. Hill, Mo., 371 S.W.2d 278, at pp. 282-283.

Except as indicated, we find those parts of the record which we examine under Rule 28.02 to be sufficient. The judgments and sentences as to all three defendants are hereby reversed and set aside, and the entire cause, as to all defendants, is remanded to the trial court for further proceedings in accordance with this opinion.

All of the Judges concur.